No. 24-1880

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

PETER TRAUERNICHT and ZACHARY WRIGHT, individually
and as representatives of others similarly situated, on behalf of the
GENWORTH FINANCIAL, INC. RETIREMENT AND SAVINGS PLAN,

*Plaintiffs-Appellees*,

v.

GENWORTH FINANCIAL, INC.,

*Defendant-Appellant.*

On Appeal From The United States District Court
For The Eastern District Of Virginia
No. 3:22-cv-532 (Hon. Robert E. Payne)

## APPELLANT'S OPENING BRIEF

Karl G. Nelson
Anna Casey
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201

Brian E. Pumphrey
Heidi E. Siegmund
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219

Eugene Scalia
*Counsel of Record*
Max E. Schulman
Alexi Ehrlich
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
EScalia@gibsondunn.com

Jennafer M. Tryck
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612

*Counsel for Defendant-Appellant Genworth Financial, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Defendant-Appellant Genworth Financial, Inc. discloses that it is publicly traded.

The following are parents, trusts, subsidiaries, and/or affiliates of Genworth Financial, Inc. that have issued shares or debt securities to the public or own more than ten percent of the stock of Genworth Financial, Inc.:  Genworth Holdings, Inc. and Enact Holdings, Inc.

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT .......................................... 4

STATEMENT OF ISSUES .................................................... 5

STATEMENT OF THE CASE ................................................ 5

    A.   ERISA Protects Individuals' Rights In
        Individual-Account Plans ........................................ 7

    B.   Genworth Offers Employees An Individual Account Plan
        Including The Popular BlackRock Funds ............................ 9

    C.   Two Former Employees Sue To Recover Alleged Losses
        To Their Individual Retirement Accounts ........................... 13

    D.   The District Court Certifies A Mandatory Class
        Of Thousands Of Individualized Monetary Claims............. 15

STANDARD OF REVIEW........................................................ 21

SUMMARY OF ARGUMENT .................................................. 23

ARGUMENT .......................................................................... 26

I.   Plaintiffs' Claims For Individual Monetary Relief
    Do Not Belong In A Mandatory Class Action ................................ 26

    A.   Controlling Precedent Forbids Mandatory Class Actions
        For Individualized Damages Claims...................................... 27

    B.   Plaintiffs' Mandatory Damages Class
        Violates Controlling Precedent............................................. 34

    C.   There Is No ERISA Exception To Rule 23 ............................. 39

II.   ERISA Fiduciary-Duty Claims Do Not Inherently Satisfy
    Rule 23(a)(2)'s Commonality Requirement ................................... 47

III.  Plaintiffs Failed To Establish Class Members' Standing
    To Seek Damages ........................................................................ 57

CONCLUSION ......................................................................... 66

Page(s)

**Cases**

*Abel v. CMFG Life Ins. Co.*,
2024 WL 307489 (W.D. Wis. Jan. 26, 2024) ........................................ 6

*Alig v. Quicken Loans Inc.*,
990 F.3d 782 (4th Cir. 2021) ............................................................... 59

*Alig v. Rocket Mortg., LLC*,
52 F.4th 167 (4th Cir. 2022) ............................................................... 59

*Alig v. Rocket Mortg., LLC*,
126 F.4th 965 (4th Cir. 2025) ...... 3, 4, 25, 26, 58, 59, 60, 61, 64, 65, 66

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .............................................................................. 51

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................ 27, 29, 34, 46, 55

*Anderson v. Advance Publ'ns, Inc.*,
2023 WL 3976411 (S.D.N.Y. June 13, 2023) ........................................ 6

*Antoine v. Marsh & McLennan Cos.*,
2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) ....................................... 6

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696 (4th Cir. 2018) ............................. 22

*Beldock v. Microsoft Corp.*,
2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ................................... 6

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) ......................................................... 30, 38

*Bond v. Marriott Int'l, Inc.*,
   296 F.R.D. 403 (D. Md. 2014) ............................................ 20, 48, 49, 50

*Bracalente v. Cisco Sys., Inc.*,
   2024 WL 2274523 (N.D. Cal. May 20, 2024) ....................................... 6

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) .......................................................... 38, 49

*Carolina Youth Action Project v. Wilson*,
   60 F.4th 770 (4th Cir. 2023) .......................................................... 18, 65

*Carr v. Int'l Game Tech.*,
   2012 WL 909437 (D. Nev. Mar. 16, 2012) .......................................... 44

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
   624 F.3d 185 (5th Cir. 2010) .............................................................. 28

*Chavez v. Plan Benefit Servs., Inc.*,
   108 F.4th 297 (5th Cir. 2024) ........................................................ 30, 31

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000) ........................................................................... 61

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ............................................................................. 23

*In re Comput. Scis. Corp. ERISA Litig.*,
   2008 WL 7527874 (C.D. Cal. Sept. 2, 2008) ....................................... 43

*Davis v. Cap. One, N.A.*,
   2023 WL 6964051 (E.D. Va. Oct. 20, 2023) ........................................ 64

*Davis v. Salesforce.com, Inc.*,
   2022 WL 1055557 (9th Cir. Apr. 8, 2022) ...................................... 19, 55

iv

Page(s)

*Davis v. Wash. Univ.*,
    960 F.3d 478 (8th Cir. 2020)..........................................................19, 55

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................................64

*DiFelice v. U.S. Airways, Inc.*,
    235 F.R.D. 70 (E.D. Va. 2006) ......................................................56, 57

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007)................................................................57

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014)..........................................................21, 23

*Fernandez v. RentGrow, Inc.*,
    116 F.4th 288 (4th Cir. 2024) ........................................................21, 61

*In re First Am. Corp. ERISA Litig.*,
    258 F.R.D. 610 (C.D. Cal. 2009) ....................................................43, 44

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762 (5th Cir. 2020)................................................................63

*Frankenstein v. Host Int'l, Inc.*,
    2024 WL 3362435 (D. Md. July 10, 2024)....................................49, 50

*In re Fremont Gen. Corp. Litig.*,
    2010 WL 3168088 (C.D. Cal. Apr. 15, 2010)......................................44

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................22

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    594 U.S. 113 (2021)..............................................................................23

# TABLE OF AUTHORITIES
## (*continued*)

Page(s)

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ................................................................. 7

*Hall v. Cap. One Fin. Corp.*,
    2023 WL 2333304 (E.D. Va. Mar. 1, 2023) .................................... 6, 15

*Hall v. Cap. One Fin. Corp.*,
    2023 WL 6388629 (4th Cir. May 12, 2023) ..................................... 6

*Halvorson v. Auto-Owners Ins. Co.*,
    718 F.3d 773 (8th Cir. 2013) ...................................................... 64

*Hayes v. Prudential Ins. Co.*,
    60 F.4th 848 (4th Cir. 2023) ...................................................... 52

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ............................................................ 7, 41

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
    2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ................................... 44

*Kidwell v. Transp. Commc'ns Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) ...................................................... 49

*Kistler v. Stanley Black & Decker, Inc.*,
    2024 WL 3292543 (D. Conn. July 3, 2024) ..................................... 6

*Lab'y Corp. v. Davis*,
    2025 WL 288305 (U.S. Jan. 24, 2025) ......................................... 4, 58

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ............................. 7, 8, 10, 42, 43, 44, 46

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ...................................................... 38

# TABLE OF AUTHORITIES
## (*continued*)

Page(s)

*Luckett v. Wintrust Fin. Corp.*,
2023 WL 4549620 (N.D. Ill. July 14, 2023)........................................ 17

*Luckett v. Wintrust Fin. Corp.*,
2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) ................................... 6, 15

*M&G Polymers USA, LLC v. Tackett*,
574 U.S. 427 (2015) ............................................................................... 39

*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023) ................................................................. 21

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ................................................................... 8, 21, 42

*Matney v. Barrick Gold*,
80 F.4th 1136 (10th Cir. 2023) ...................................................... 19, 55

*McLaurin v. Prestage Foods, Inc.*,
271 F.R.D. 465 (E.D.N.C. 2010) ......................................................... 28

*Moreau v. Harris Cnty.*,
158 F.3d 241 (5th Cir. 1998)................................................................. 60

*In re Mut. Funds Inv. Litig.*,
529 F.3d 207 (4th Cir. 2008).............................................................. 42

*NFIB v. Sebelius*,
567 U.S. 519 (2012)............................................................................. 46

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) ............................................... 63

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)................................. 1, 29, 30, 31, 32, 33, 34, 46, 56

Page(s)

*Pantoja v. Edward Zengel & Son Express, Inc.*,
    2011 WL 7657382 (S.D. Fla. Aug. 5, 2011) ........................ 44

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) ................................. 51

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................ 32

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield*,
    654 F.3d 618 (6th Cir. 2011) ............................... 28

*Pruitt v. Allied Chem. Corp.*,
    85 F.R.D. 100 (E.D. Va. 1980) .............................. 28

*Rocket Mortg., LLC v. Alig*,
    142 S. Ct. 748 (2022) ...................................... 59

*SEC v. Jarkesy*,
    603 U.S. 109 (2024) ........................................ 46

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .................................... 62, 63

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ............ 3, 12, 15, 19, 24, 55

*Spano v. Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ............................... 53

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ........................................ 62

*Stafford v. Bojangles' Rests., Inc*,
    123 F.4th 671 (4th Cir. 2024) ................. 2, 47, 48, 51

# TABLE OF AUTHORITIES
## (*continued*)

Page(s)

*Stuart v. State Farm Fire & Cas. Co.*,
910 F.3d 371 (8th Cir. 2018).............................................................64

*In re Syncor ERISA Litig.*,
227 F.R.D. 338 (C.D. Cal. 2005) ......................................................41

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020).........................................2, 7, 9, 24, 39, 41, 48, 52

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017).................................................................3, 26, 63

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).........................3, 22, 26, 57, 59, 60, 61, 63, 65, 66

*Tullgren v. Booz Allen Hamilton*,
2023 WL 2307615 (E.D. Va. Mar. 1, 2023), ........................................6

*Tullgren v. Booz Allen Hamilton*,
2023 WL 6458653 (4th Cir. May 12, 2023).........................................6

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)...................................................................33, 61

*United States v. L.A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952)............................................................................65

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................2, 22, 23, 24, 25, 29, 30, 31, 32, 33, 34,
37, 38, 39, 40, 41, 47, 48, 50, 51, 57, 62

*Windham v. Am. Brands, Inc.*,
565 F.2d 59 (4th Cir. 1977) (en banc)................................................38

*Zimmerman v. Bell*,
800 F.2d 386 (4th Cir. 1986).......................................22, 27, 31, 34, 40

ix

Page(s)

*Zinser v. Accufix Rsch. Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) ........................................................ 28, 41

**Statutes**

28 U.S.C. § 1292(e) .............................................................................. 4

28 U.S.C. § 1331 ................................................................................... 4

ERISA § 404(a)(1)(B),
29 U.S.C. § 1104(a)(1)(B) .............................................................. 8

ERISA § 409(a),
29 U.S.C. § 1109(a) ..................................................................... 8, 43

ERISA § 502(a)(2),
29 U.S.C. § 1132(a)(2) ............ 8, 9, 14, 20, 25, 41, 42, 43, 44, 49, 50, 57

Rules Enabling Act,
28 U.S.C. § 2072(b) ................................. 2, 23, 26, 27, 32, 33, 39, 46, 62

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................... 14

Fed. R. Civ. P. 12(b)(6) ..................................................................... 15

Fed. R. Civ. P. 23 ................ 2, 21, 23, 26, 27, 29, 30, 31, 33, 38, 39, 46, 51

Fed. R. Civ. P. 23(a) ....................................................... 18, 19, 22, 27, 55

Fed. R. Civ. P. 23(a)(2) ........................................... 2, 5, 19, 25, 47, 50, 51

Fed. R. Civ. P. 23(a)(4) .................................................................... 56

Fed. R. Civ. P. 23(b) ........................................................................ 27

# TABLE OF AUTHORITIES
## (*continued*)

Page(s)

Fed. R. Civ. P. 23(b)(1) ................... 1, 5, 15, 20, 21, 22, 23, 26, 27, 29, 30, 31, 32, 34, 39, 40, 43, 44, 46, 47, 56

Fed. R. Civ. P. 23(b)(1)(A) ..................................................... 27, 28, 34, 45

Fed. R. Civ. P. 23(b)(1)(B) ........................................... 27, 28, 29, 34, 44, 45

Fed. R. Civ. P. 23(b)(2) ...................................................................... 30, 31

Fed. R. Civ. P. 23(b)(3) ..................... 2, 4, 23, 24, 26, 29, 30, 31, 32, 40, 41

Fed. R. Civ. P. 23(f)............................................................................. 4, 21

## Other Authorities

1 Newberg & Rubenstein on Class Actions (6th ed.) ............................. 64

7A Wright & Miller, Fed. Prac. & P. Civ. ............................................... 28

Edward A. Zelinsky, *The Defined Contribution Paradigm*, 114 Yale L.J. 451 (2004) ......................................................................... 8

**INTRODUCTION**

This case shows why the strong medicine of a mandatory class action must not be abused by "adventurous application" to "individual" claims for monetary relief. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). Plaintiffs are two former employees who insist in their complaint that defendant Genworth Financial, Inc. should have denied retirement-plan participants the option to invest in a widely held, highly rated set of funds. They claim that Genworth's retention of these funds breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA") and seek damages on behalf of a sweeping class of essentially all the plan's thousands of participants and beneficiaries. But many participants' accounts would have fared *worse* under alternative investments identified in Plaintiffs' complaint, depending on different individuals' choices of when and how to invest. Those putative class members may gain nothing from or even be harmed by this suit, yet they have no right to opt out of this class action.

The district court brushed these concerns aside, crafting an ERISA-specific rule to certify a *mandatory* class action under Federal Rule of Civil Procedure 23(b)(1), without opt-out rights or even notice to the class.

That flouts precedent holding that "individualized monetary claims belong in Rule 23(b)(3)" because it offers "greater procedural protections," which are required by Rule 23, the Constitution, and the Rules Enabling Act. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). The court similarly erred in holding that ERISA fiduciary-duty claims "inherently" satisfy Rule 23(a)(2)'s commonality requirement, contrary to other courts' rulings—and to this Court's recent reaffirmation that "'Rule 23 does not allow'" a "'30,000 foot view of commonality.'" *Stafford v. Bojangles' Rests., Inc*, 123 F.4th 671, 680 (4th Cir. 2024).

These rulings by the court below are legally erroneous. "There is no ERISA exception to" Rule 23, any more than there is to "Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). But the district court's reasoning, which expressly disagreed with other courts, would make mandatory class certification a *fait accompli* in virtually every ERISA fiduciary-breach case. That includes cases like this that are manifestly unfit for mandatory classes because they purport to resolve the rights of unharmed class members who will never receive notice and the right to opt out of the attorney-driven litigation prosecuted in their names. And in justifying that outcome by relying on a single, fundamentally different

comparator fund as a benchmark for Plaintiffs' asserted injuries, the district court split with other circuits that have rejected such "apples and oranges" comparisons as a matter of law. *E.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022).

The district court separately erred when it certified the class without deciding whether *any*, let alone all, of the thousands of absent class members have Article III standing. The Supreme Court and this Court have held that "*every class member* must have Article III standing in order to recover individual damages." *Alig v. Rocket Mortg., LLC*, 126 F.4th 965, 968 (4th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Basic jurisprudential principles indicate that Plaintiffs must demonstrate class members' standing "*before* a court certifies a class" because standing must be maintained "at all stages of litigation," just as in non-class actions. *See TransUnion*, 594 U.S. at 431 & n.4; *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017) (holding in a non-class case that multiple plaintiffs each "must have Article III standing in order to pursue . . . separate money judgments").

But the district court declined to consider any absent class member's standing until *later*—at the damages stage. That is wrong; this

Court's precedent holds that it is legal error to certify a class seeking damages on behalf of uninjured class members. *See Alig*, 126 F.4th at 968 (reversing order certifying class with members who lacked standing).[1]

For each of these independent reasons, the Court should reverse the district court's class-certification order and remand the case so that it may proceed on a non-class basis.

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' federal claims, which arise under ERISA. *See* JA42. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). The district court granted Plaintiffs' motion for class certification on August 15, 2024. JA481-482. Genworth filed a timely petition for permission to appeal from that order

---

[1] The Supreme Court is expected to address this issue further this Term in *Laboratory Corp. v. Davis*, which concerns "[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury." 2025 WL 288305, at *1 (U.S. Jan. 24, 2025).

on August 29, 2024, which this Court granted on September 13, 2024. No. 24-220, Dkts. 1, 14.

## STATEMENT OF ISSUES

Whether the district court erred in:

(1) Certifying a mandatory Rule 23(b)(1) class for claims seeking individualized monetary relief;

(2) Holding that ERISA claims for breach of fiduciary duty "inherently" satisfy Rule 23(a)(2)'s commonality requirement; and

(3) Granting class certification without determining that any absent class members have Article III standing to seek damages.

## STATEMENT OF THE CASE

This case is one of 11 nearly identical lawsuits brought by the same lawyers against employer-sponsored retirement plans. In each, Plaintiffs' counsel alleged that plan fiduciaries violated their ERISA duties by offering participants the option to invest in an award-winning suite of BlackRock "target-date" retirement funds. The funds achieved somewhat lower—but still positive—performance when measured against Plaintiffs' hand-picked subset of comparators during a narrow, arbitrarily selected period. Nearly all these cases have been dismissed

for failing to state a claim, including two in this Circuit. Most of those dismissals were not even appealed. This is the only one of the 11 cases that has been certified as a class action.[2] Meanwhile, other companies have been sued for *failing* to offer the BlackRock funds during the same period. *E.g.*, *Binder v. PPL Corp.*, No. 5:22-cv-133 (E.D. Pa.).

---

[2] *See Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023) (dismissing complaint with prejudice), *appeal dismissed*, 2023 WL 6388629 (4th Cir. May 12, 2023); *Tullgren v. Booz Allen Hamilton*, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) (same), *appeal dismissed*, 2023 WL 6458653 (4th Cir. May 12, 2023); *Luckett v. Wintrust Fin. Corp.*, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) (same), *appeal dismissed*, No. 24-2705 (7th Cir. Dec. 19, 2024); *Beldock v. Microsoft Corp.*, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) (same); *Abel v. CMFG Life Ins. Co.*, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024) (dismissing complaint, after which plaintiffs voluntarily dismissed case); *Antoine v. Marsh & McLennan Cos.*, 2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) (same); *Anderson v. Advance Publ'ns, Inc.*, 2023 WL 3976411 (S.D.N.Y. June 13, 2023) (dismissing complaint, after which plaintiffs voluntarily dismissed case); *Bracalente v. Cisco Sys., Inc.*, 2024 WL 2274523 (N.D. Cal. May 20, 2024) (dismissing complaint, after which plaintiffs amended and defendant again moved to dismiss); *Motz v. Citigroup Inc.*, No. 22-cv-965 (D. Conn.) (motion to dismiss pending); *Kistler v. Stanley Black & Decker, Inc.*, 2024 WL 3292543 (D. Conn. July 3, 2024) (denying motion to dismiss, after which defendants filed answer).

## A. ERISA Protects Individuals' Rights In Individual-Account Plans.

ERISA is the "'comprehensive and reticulated'" federal statute governing employee benefit plans, including retirement plans. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).

This case concerns the "essential" distinction between two kinds of retirement plans, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999): "defined-benefit" retirement plans, on the one hand, and "individual-account" or "defined-contribution" plans, on the other. "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole*, 590 U.S. at 540. By contrast, a "'defined contribution plan' or 'individual account plan' promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008).

Today, individual-account plans "dominate the retirement plan scene." *LaRue*, 552 U.S. at 255. But "when ERISA was enacted" and for decades afterward, "'the [defined-benefit] plan was the norm of American

pension practice.'" *Id.*; *see* Edward A. Zelinsky, *The Defined Contribution Paradigm*, 114 Yale L.J. 451, 471 (2004) (recounting how "the defined benefit plan [went] from the behemoth of the private retirement system to a secondary player").

ERISA's central provisions generally apply to both types of retirement plans. As relevant here, ERISA § 409(a), 29 U.S.C. § 1109(a), imposes liability on plan administrators for breach of fiduciary duties with respect to a plan. *See also* 29 U.S.C. § 1104(a)(1)(B) (specifying fiduciary duties). And ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to sue for "appropriate relief" under Section 409(a)'s fiduciary-liability provision.

But the provisions apply differently, depending on the type of plan. *See LaRue*, 552 U.S. at 256 (distinguishing "the defined benefit context" from "the defined contribution context"). For example, in cases involving defined-benefit plans, recovery under ERISA § 502(a)(2) "must 'inure[ ] to the benefit of the plan *as a whole*,' not to particular persons with rights under the plan." *Id.* at 250 (ultimately quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)). But that limitation "does not apply to" cases involving "defined contribution plans." *Id.* at 256. In the latter

cases, ERISA § 502(a)(2) "does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account." *Id.* (emphasis added). This distinction reflects that individual experiences of participants in the same defined-contribution plan can vary based on factors including individual investment elections and timing of investments, so that "participants in a defined-benefit plan are not similarly situated to . . . participants in a defined-contribution plan." *Thole*, 590 U.S. at 538.

## B. Genworth Offers Employees An Individual Account Plan Including The Popular BlackRock Funds.

Genworth is an insurance holding company. As part of its generous employee-benefits package, it offers employees the opportunity to invest in the Genworth Retirement and Savings Plan, a 401(k) plan with over 4,000 participants. JA37-38. The Plan aims to "'help participants in accumulating savings to achieve financial security upon retirement.'" JA664.

Like most modern retirement plans, Genworth's is an individual-account or defined-contribution plan. JA42; *see supra* at 7-8. That means that each participant in Genworth's Plan chooses how to "direct" investments in her individual account among "various investment

options offered by the Plan," including domestic and international equity funds, fixed-income funds, and Genworth common stock. JA42. Although Genworth selects and monitors the performance of the investment options offered through the Plan, *see* JA38; JA41, the benefits each participant receives are "a function of the amounts contributed to that account"—as "direct[ed]" by each participant—and of "the investment performance of those contributions," *LaRue*, 552 U.S. at 250 & n.1.

Plaintiffs' case centers upon a particularly individualized kind of 401(k) plan investment, known as a Target Date Fund ("TDF"). *See* JA97-98. TDFs are long-term investments that gradually change their asset allocations to become more conservative as the participant approaches a "target" retirement date. JA44-45. TDFs have grown significantly in popularity in recent years, with the result that most plans today offer a TDF as their default investment option. JA667-668. Between 2014 and 2019, plans using TDFs as their default option jumped from 60% to 87%. JA668.

Each TDF has an array of sub-funds, or "vintages," invested in different mixes of assets calibrated to different retirement dates. These

vintages are typically referred to by the participant's expected retirement year.  For example, the current asset allocation for a 2030 vintage is more conservative than a 2050 vintage, which is decades away from retirement.  *See* JA668.  These different risk profiles mean that different vintages of the same TDF may perform much differently under the same market conditions.  *See* JA630.  In other words, and as was the case here, some vintages may perform better than an alternative available fund, whereas other vintages of the same TDF may perform the same or less well compared to alternatives.  JA630.

Of the dozens of target-date retirement funds available, the BlackRock TDFs offered by Genworth are the third most popular, with nearly 9% market share.  JA52.  Morningstar, the leading source of fund-industry analysis, has consistently given the BlackRock TDFs its highest possible "Gold" rating.  *See* Dkt. 131-5 at 8.  In 2016, for example, the BlackRock TDFs were one of only two TDFs to earn the Gold rating.  JA679.

A key characteristic of the BlackRock TDFs is that, unlike some other TDFs, they invest only in "passively managed" underlying funds.  JA449.  Passively managed funds (also known as "index funds") "

██████████████████████████████████████████████

██████████████████████.”  JA666.  By contrast, actively

managed  funds  “████████████████████████████████

██████████████████████████████████████████████

██████████████████████.”  JA666.  These two types of funds

“█████████████████████████████████████████████

████████████,” JA666, which has led multiple circuits to hold that passive

and active funds are “‘apples and oranges’” and “inapt comparators” for

purposes of ERISA claims, *e.g.*, *CommonSpirit*, 37 F.4th at 1166-67.  In

recent years, the market has shifted in favor of passively managed funds,

with over 99% of large plans offering index funds and more net new

investments flowing to passively managed TDFs, like BlackRock’s, than

to actively managed TDFs.  JA666.[3]

---

[3] TDFs  differ  in  other  important  ways,  including  the  time,  relative  to
retirement,  at  which  they  stop  changing  their  asset  allocation.  “█
███████████”  TDFs,  like  BlackRock’s,  “██████████████████
███████████████████████████████,”  whereas  the  allocation  of
“████████████████”  funds  “████████████████████████
███████████████.”  JA669.  This distinction reflects additional  “█
██████████████████████████████”  between  different  TDFs.  JA669.

## C. Two Former Employees Sue To Recover Alleged Losses To Their Individual Retirement Accounts.

Plaintiffs Peter Trauernicht and Zachary Wright are former Genworth employees and "former participant[s] in the Plan." JA40. Trauernicht worked for Genworth from 2018 until 2022. JA685-686. He invested in three vintages of the BlackRock TDF—the Retirement, 2040, and 2050 vintages—beginning in late 2018. JA685. (It is unusual for an employee to select three different retirement "vintages," and contrary to how TDFs are designed to operate. JA685-686.) Wright worked for Genworth from 2014 until 2019, ███████████████████████████ ████████████████ Dkt. 154-8; *see* Dkt. 154-4 at 18:12-21:24. He invested in the 2050 vintage of the BlackRock TDF from at least January 2016 through March 2020, when he withdrew his money from the Plan. JA687-688.

Plaintiffs filed a complaint alleging that Genworth breached its fiduciary duties by offering participants the option to invest in the BlackRock TDFs, which they maintain "were not a suitable and prudent option." JA46. Plaintiffs' complaint contended that Genworth should have removed the BlackRock TDFs from the Plan in 2016 and replaced them with one of four alternative TDF suites: the Vanguard Target

Retirement, T. Rowe Price Retirement, American Funds, and Fidelity Freedom Index. JA52; JA60-67. Plaintiffs' complaint alleged that Genworth's retention of the BlackRock TDFs as an investment option breached its fiduciary duties and entitled Plaintiffs to relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). JA42; JA85. Plaintiffs sought damages and declaratory and injunctive relief. JA93.

Plaintiffs' complaint also stated their intent to litigate the case as a class action on behalf of "[a]ll participants and beneficiaries" in Genworth's Plan during a specified period. JA85. Plaintiffs conceded that the "amount of damages recovered by each Class member" would be an "individual issue[] of significance" requiring "allocation and distribution of damages to Class members." JA87-88. But Plaintiffs dismissed this as a mere "ministerial" issue. JA87-88.

Genworth moved to dismiss. Before ruling on that motion, the district court permitted Plaintiffs to obtain discovery and then amend their complaint twice. *See* JA508. The court eventually granted Genworth's motion to dismiss Plaintiffs' injunctive-relief claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1), holding that as "former" Plan participants, Plaintiffs could not "benefit from any

prospective relief." JA110. As a result, Plaintiffs in this case "currently present[] only claims for declaratory relief and monetary damages." JA446.

The district court declined, however, to dismiss Plaintiffs' remaining claims under Rule 12(b)(6). JA135. That ruling was contrary to decisions in nearly all the other suits filed in parallel by Plaintiffs' counsel, including two cases in the same district, in which other courts dismissed nearly identical complaints because the complaints "ha[d] not pled meaningful benchmarks" to establish the BlackRock TDFs' supposed underperformance. *E.g.*, *Hall*, 2023 WL 2333304, at \*6-7. These courts applied precedent from other circuits holding that "[c]omparing index funds" to "actively managed funds," as Plaintiffs' counsel sought to do, "is a textbook 'apples-to-oranges'" comparison that does not support a plausible ERISA claim. *Luckett*, 2024 WL 3823175, at \*3-4 (citing *CommonSpirit*, 37 F.4th at 1166); *see supra* at 11-12 (discussing passive and actively managed funds).

## D. The District Court Certifies A Mandatory Class Of Thousands Of Individualized Monetary Claims.

Plaintiffs moved under Rule 23(b)(1) to certify a mandatory class of "[a]ll participants" in the Plan from August 2016 through the end of the

case, with no notice or opt-out rights to the putative class. JA151. Plaintiffs' motion papers relied on "███████" of the comparator funds identified in their complaint. JA757. In opposition, Genworth identified several reasons why class certification is inappropriate, including that the putative class included many participants who would have fared *worse* under Plaintiffs' proffered comparators. Most notably, several vintages of the BlackRock TDFs (accounting for as much as 42% of Plan TDF assets) performed *better* over the class period than the corresponding vintages in the passively managed funds that Plaintiffs identified as preferable alternatives. *See* JA635-636.

At argument on the motion, the district court voiced concerns that Plaintiffs were "jeopardizing class members' rights" by certifying a mandatory class, without any "right to opt out," that included "people who did not suffer loss." JA300-301; JA339. The court repeatedly noted the concerns "expressed by the Supreme Court about the importance of notice and a right to opt out where monetary damages are involved." JA432; *see* JA347 (similar).

Following argument and while the class-certification motion was under consideration, the parties completed discovery and Genworth filed

a motion for summary judgment on two issues. Dkt. 213. In opposing summary judgment, Plaintiffs submitted new expert reports that departed from the theory of liability in their class-certification papers, including by abandoning all but one of the alternative investments that their certification papers identified as preferred replacements for the BlackRock TDFs. *See* Dkt. 217-3. Instead, on summary judgment Plaintiffs relied solely on the "American Funds"—a fund that other courts had held as a matter of law to be an inapposite, apples-to-oranges comparator for the BlackRock TDFs. *Supra* at 11-12; *see Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620, at *3 (N.D. Ill. July 14, 2023) ("American Funds" are "actively managed" and so cannot "provide 'a meaningful benchmark'" for the performance of the "passively-managed" BlackRock TDFs).

The district court granted Plaintiffs' motion for class certification, with one "modification[ ]." JA438. Plaintiffs had moved to certify a class of "all" Plan participants (even those who never invested a penny in the BlackRock TDFs). JA461. The district court "agree[d]" with Genworth that these participants "have not suffered the same injury (if any injury)

or do not possess the same interests as Plaintiffs," and thus must be excluded from the class.  JA461.

The district court otherwise rejected Genworth's objections to class certification.  It brushed aside the problem that the class still included many members (like Plaintiff Trauernicht) who suffered no injury (and thus lacked Article III standing) because their individual accounts would have fared *worse* had they instead invested in Plaintiffs' analogous comparators.  *See* JA633-636.  Instead, relying on a case that no party had identified as relevant to this issue, the court concluded that this Court had already "squarely held" in *Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023), that courts need not determine *any* absent class members' standing at the class-certification stage, but need "only" consider "the class representatives."  JA445 n.2.

In discussing standing, the district court declined to address which—if any—of the four comparator investments identified in Plaintiffs' complaint and class-certification motion was a "suitable alternative investment," insisting that deciding the issue was "inappropriate at this stage" and should be "reserved for trial."  JA448; JA454; JA456.  But then, in addressing Rule 23(a)'s requirements of

typicality and commonality, the court reversed field and predicated certification on a comparison with a single alternative investment—the materially distinct "American Funds," which "Plaintiffs ha[d] selected" in opposing summary judgment but had not singled out in their class certification papers. JA463. The court's Rule 23(a) analysis thus relied on the "assum[ption] that the BlackRock TDFs would have been replaced with the American Funds." JA463. In relying on the American Funds as a comparator, the district court not only departed from its own statement pages earlier that settling on a single comparator was "inappropriate at this stage," JA454, but also split from other circuits' holdings that actively managed funds like the American Funds are legally inadequate comparators for passively managed funds like the BlackRock TDFs. *See CommonSpirit*, 37 F.4th at 1166-67; *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020); *Matney v. Barrick Gold*, 80 F.4th 1136, 1153 (10th Cir. 2023); *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022).

In certifying a mandatory class action, the district court repeatedly relied on what it called "the unique situation presented in ERISA." JA477. Plaintiffs satisfied Rule 23(a)(2)'s commonality requirement, the

court said, because "ERISA § 502(a)(2) actions *inherently* present issues common to the class"—even though Plaintiffs' putative class here includes "uninjured" class members who "did not suffer losses in their individual accounts." JA458 (emphasis added); JA463 & n.6; *cf.* JA458 (district court acknowledging that "[t]o prevail on commonality, Plaintiffs must show that the putative class has 'suffered the same injury'"). The court did not address Genworth's citation of contrary cases rejecting putative ERISA classes for failure to establish commonality, such as *Bond v. Marriott International, Inc.*, 296 F.R.D. 403 (D. Md. 2014) (cited in JA624; JA637-638).

The district court also denied that Plaintiffs' claims threaten "intraclass conflicts," asserting—without precedential authority—that class members "who profited from the retention of the BlackRock TDFs would not have to pay back their gains, and thus, would not be harmed if Plaintiffs were to prevail." JA463.

In holding that Plaintiffs satisfied Rule 23(b)(1)'s requirements for mandatory class certification, the court again relied on the purportedly "derivative nature of [ERISA] § 502(a)(2) claims" to "distinguish them from individual claims for monetary relief," which the court

acknowledged "will normally not satisfy Rule 23(b)(1)'s requirements." JA471; JA477. The court relied on *Russell*, 473 U.S. 134, which addressed defined-benefit plans, rather than individual-account plans like Genworth's. *See supra* at 7-9.

Genworth filed a Rule 23(f) petition for review of the class-certification order. *See* No. 24-220, Dkt. 1. This Court granted the petition and transferred the case to its regular docket. No. 24-220, Dkt. 14.[4]

## STANDARD OF REVIEW

This Court "review[s] a district court's class certification decision for abuse of discretion." *In re Marriott Int'l, Inc.*, 78 F.4th 677, 685 (4th Cir. 2023). A "'district court per se abuses its discretion when it makes an error of law,'" *id.*, or when it "materially misapplies the requirements of Rule 23," *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). Questions of law, including "Article III standing," are reviewed *de novo*. *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024). "As the

---

[4] The district court also denied Genworth's motion for summary judgment. *See* JA483. It then stayed proceedings pending Genworth's 23(f) petition and appeal. *See* JA499-500.

party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing. Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 430-31 (citation omitted). The Court also reviews *de novo* "questions of statutory interpretation," including the meaning of "ERISA provisions." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 701, 703 (4th Cir. 2018).

The class here was certified under Rule 23(b)(1). JA480. Rule 23(b)(1) certification is appropriate only where all of the prerequisites of Rule 23(a) are satisfied, and where "individual adjudication of the controversy would prejudice either the party opposing the class, or the class members themselves." *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) (citation omitted). In relevant part, Rule 23(a) is satisfied only where plaintiffs "show that 'there are questions of law or fact common to the class,'" which—among other things—"requires the plaintiff to demonstrate that the class members *'have suffered the same injury*.'" *Dukes*, 564 U.S. at 349-50 (emphasis added) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982)).

Rule 23 "does not set forth a mere pleading standard"; rather, the "party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Dukes*, 564 U.S. at 350. Thus, plaintiffs "must be prepared to prove that there are *in fact* . . . common questions of law or fact, etc." *Id.* While "[i]t is the plaintiffs' burden to demonstrate compliance with Rule 23," the district court also "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT*, 764 F.3d at 358. The court cannot avoid this analysis "even when that requires inquiry into the merits." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).

## SUMMARY OF ARGUMENT

The district court's class-certification order rested on three legal errors, each of which independently justifies reversal.

**I.** The court erred in certifying Plaintiffs' claims for individualized monetary relief in a mandatory class under Federal Rule of Civil Procedure 23(b)(1), with no notice to the class or opportunity for members to opt out. Rule 23, the Constitution, and the Rules Enabling Act all make "clear that individualized monetary claims belong in Rule

23(b)(3)"—not in a mandatory class—because Rule 23(b)(3) offers greater "procedural protections." *Dukes*, 564 U.S. at 362. These principles apply squarely to the damages claims in this case, which are inherently individualized because they seek different (and in some cases, nonexistent) monetary relief based on the particular performance of each class member's individual account.

The district court's contrary ruling relied solely on its assertion of authority to craft a special ERISA exception from the governing precedent. But that contradicts the Supreme Court's admonition that "[t]here is no ERISA exception" to "commonsense" principles governing "class-action suit[s]." *Thole*, 590 U.S. at 540, 547. It also ignores the critical distinction between ERISA claims that involve individual-account plans, as here, versus defined-benefit plans. And it impermissibly rests on the predicate that class damages here will be measured solely by reference to a single comparator fund that is "actively managed"—making it a legally "inapt comparator[]" for the passive BlackRock TDFs under the law of at least three circuits. *CommonSpirit*, 37 F.4th at 1167. The district court's circuit-splitting logic only exacerbates the conflicts between Plaintiffs and other class members,

who should not be bound to a legally inapposite comparator just to facilitate class treatment.

**II.** The district court further erred in holding that ERISA § 502(a)(2) claims "inherently" satisfy Rule 23(a)(2)'s commonality requirement. JA458. Assessing commonality requires courts to conduct a "'rigorous analysis'" to determine whether class members suffered "'the same injury'"—not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350-51. The district court flouted that precedent by excusing this analysis for claims that defendants violated ERISA § 502(a)(2), contrary to other cases rejecting ERISA fiduciary-breach classes for failure to establish commonality. And the court papered over the conflicts among class members by erroneously seizing on the American Funds as a comparator, and invoking a "no-refund" theory that would require Genworth to pay *more* benefits than the Plan's terms require, contrary to fundamental ERISA principles.

**III.** This Court should also reverse on the ground that the district court erroneously certified a class without determining whether all class members have Article III standing to seek damages. *See Alig*, 126 F.4th at 968. While the Supreme Court formally reserved the certifiability of

such classes in *TransUnion*, this Court effectively addressed the issue in *Alig* by reversing a district court's certification of a class including class members lacking standing to seek damages. *Id.* That ruling accords with basic jurisprudential principles dictating that Plaintiffs must satisfy Article III for every class member seeking individualized monetary relief. That is the "simple rule" in non-class cases, where multiple plaintiffs must each establish standing to "seek separate money judgments." *Town of Chester*, 581 U.S. at 439-40. Rule 23, as a mere procedural device to aggregate individual claims, does not (and under the Constitution and Rules Enabling Act, cannot) excuse that "same principle." *Id.* at 439.

## ARGUMENT

### I. Plaintiffs' Claims For Individual Monetary Relief Do Not Belong In A Mandatory Class Action.

The district court erred in certifying a mandatory class under Rule 23(b)(1) for claims seeking individualized monetary relief. Such claims may only be certified, if at all, under Rule 23(b)(3), which requires greater procedural protections including notice to the class and an opportunity to opt out.

**A.    Controlling Precedent Forbids Mandatory Class Actions For Individualized Damages Claims.**

Rule 23, the Constitution, and the Rules Enabling Act all prohibit the certification of individual monetary claims in a mandatory class action under longstanding precedent.

**1.** Plaintiffs seeking class certification must establish that they satisfy at least one of the three prongs of Rule 23(b), in addition to each Rule 23(a) factor.  In this case, Plaintiffs sought to certify a class under Rule 23(b)(1), which authorizes certification only where individual actions would (A) create a risk of "incompatible standards of conduct" for the defendant, or (B) "substantially impair or impede" absent class members' ability to protect their interests.  For example, Rule 23(b)(1)(A) certification may be appropriate in a water-rights dispute between several up- and "downriver" landowners, where counterparties "must treat all alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Rule 23(b)(1)'s prerequisites for class certification are "not normally posed by a request for money damages." *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986).  That is because "[s]hould the class members seek individual judgments on such predominantly monetary claims,

there is no recognizable danger of [defendants] being required to follow inconsistent or incompatible *courses of conduct* within the meaning of (b)(1)(A)." *Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 107 (E.D. Va. 1980) (emphasis added); *accord Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Rule 23(b)(1)(A) certification requires more, however, 'than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts'" (quoting 7A Wright & Miller, Fed. Prac. & P. Civ. § 1773)).[5]

Nor do individual damages claims generally impede others' rights as required for Rule 23(b)(1)(B). *Pruitt*, 85 F.R.D. at 107. The one exception to that rule is the unique context of a "'limited fund'" where "numerous persons make claims against a fund insufficient to satisfy all

---

[5] *See also*, *e.g.*, *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010) (affirming denial of Rule 23(b)(1)(A) certification because "no inconsistency is created when courts award varying levels of money damages to different plaintiffs"); *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618, 633 (6th Cir. 2011) (reversing Rule 23(b)(1)(A) certification on similar grounds); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 477 (E.D.N.C. 2010) (a defendant "would not be put in a conflicted position simply because it might have to pay damages to some class members but not to others or to pay them different amounts" (quotation marks omitted)).

claims," *Amchem*, 521 U.S. at 614, which is undisputedly not presented here, *see* JA479 (district court acknowledging this is not a limited-fund case). That is because a limited fund is the only context where individual damages lawsuits could "'as a practical matter be dispositive of the interests of the other members not parties to the adjudications,'" by threatening their ability to seek damages from a "fund inadequate to pay them all." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833, 836 (1999) (quoting Fed. R. Civ. P. 23(b)(1)(B)). By contrast, where a fund is "not limited, no prejudice to the other[s]" will "result from the simple payment" of damages to an individual plaintiff. *Id.* at 837 n.17.

It is thus "clear that individualized monetary claims belong in Rule 23(b)(3)"—not in mandatory classes under Rule 23(b)(1)—because Rule 23(b)(3) requires "greater procedural protections" including "notice, and the right to opt out." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). "In contrast to class actions brought under subdivision (b)(3), in cases brought under subdivision (b)(1), Rule 23 does not provide for absent class members to receive notice and to exclude themselves from class membership as a matter of right." *Ortiz*, 527 U.S. at 833 n.13. The lack of those protections in mandatory class actions is inconsistent with

individual claims for "money damages." *Id.* at 845-46. Accordingly, courts have recognized that "[i]f a class action is more about individual monetary awards than it is about uniform injunctive or declaratory remedies, then the 'presumption of cohesiveness' breaks down and the procedural safeguard of opt-out rights becomes necessary" under Rule 23. *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015); *see also, e.g.*, *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 316 (5th Cir. 2024) ("Certification under Rule 23(b)(1) is improper here because this is primarily an action for damages").

The reasoning of the Supreme Court in *Dukes*—which involved a mandatory class improperly certified under Rule 23(b)(2)—applies equally to mandatory classes under Rule 23(b)(1). 564 U.S. at 362. As the Supreme Court explained, Rule 23(b)(3)'s heightened procedural protections "are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*." *Id.* For example, "[p]redominance and superiority are self-evident" when a Rule 23(b)(2) class properly seeks an "indivisible injunction benefiting all [class] members at once." *Id.* "But with respect to each class member's individualized claim for money, that is not so—which is precisely why

(b)(3) requires the judge to make findings about predominance and superiority before allowing the class." *Id.* at 363.

Rule 23(b)(1) similarly lacks Rule 23(b)(3)'s distinctive protections of predominance, superiority, and notice and opt-out requirements. *Dukes* underscored this point by discussing both "(b)(1) and (b)(2)" classes, in contrast to Rule 23(b)(3), and by relying on *Ortiz*, a precedent specifically addressing a class certified under Rule 23(b)(1). 564 U.S. at 361. And this Court applied similar reasoning to Rule 23(b)(1) in *Zimmerman*, 800 F.2d at 389. *See also*, *e.g.*, *Chavez*, 108 F.4th at 315-16 (applying similar reasoning to Rule 23(b)(1)).

**2.** Beyond the requirements of Rule 23 itself, the Constitution also prohibits mandatory class actions for individual monetary relief. As the Supreme Court has explained, "mandatory class actions aggregating damages claims implicate the due process 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Ortiz*, 527 U.S. at 846. Although these due-process concerns are present to some degree in every class action, they are "magnified" in Rule 23(b)(1)

actions because, "[u]nlike Rule 23(b)(3) class members, objectors to [mandatory class actions] have no inherent right to abstain." *Id.* at 846-47. Those absent members' rights and obligations "are resolved regardless of either their consent, or, in a class with objectors, their express wish to the contrary." *Id.* at 847.

The Supreme Court has repeatedly enforced this due-process limit on mandatory class actions. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Court held that "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from [a] class" raising "a claim for money damages or similar relief." *Id.* at 811-12. In *Ortiz*, the Supreme Court applied the same reasoning and invoked "avoidance" of these "serious constitutional concerns" to "counsel against adventurous application of" Rule 23(b)(1), including "mandatory class actions aggregating damages claims." 527 U.S. at 845-46. And in *Dukes*, the Court again emphasized that, "[i]n the context of a class action predominantly for money damages," the "absence of notice and opt out violates due process." 564 U.S. at 363.

**3.** The Rules Enabling Act further buttresses these limitations on mandatory class actions. That Act commands that the Federal Rules

"shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). But as *Ortiz* recognized, mandatory certification of individual claims for "money damages" would "potential[ly] conflict" with that command by coercively resolving absent class members' "rights" under substantive law (such as ERISA) to bring individual damages claims as they see fit. 527 U.S. at 842, 845-46.

"Because the Rules Enabling Act forbids interpreting Rule 23" to abridge individual rights, "a class cannot be certified on the premise" that members "will not be entitled to litigate" the "individual claims" that they could otherwise bring for damages. *Dukes*, 564 U.S. at 367; *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016) (rejecting approach to class litigation that would "violate[] the Rules Enabling Act by giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action"). The Rules Enabling Act thus "underscores the need for caution" in keeping mandatory class certification "close[ly]" within its traditional bounds. *Ortiz*, 527 U.S. at 845.

## B.  Plaintiffs' Mandatory Damages Class Violates Controlling Precedent.

These principles foreclose the mandatory class certified in this case because Plaintiffs raise "individualized monetary claims" that do not "belong" in Rule 23(b)(1).  *Dukes*, 564 U.S. at 362.  Rule 23(b)(1)(A) is not satisfied because Plaintiffs do not seek any injunction or similar equitable relief that could "risk establishing 'incompatible standards of conduct'" for Genworth.  *Amchem*, 521 U.S. at 614.  A "request for money damages" to Plaintiffs' individual accounts poses no "danger of imposing 'incompatible standards.'"  *Zimmerman*, 800 F.2d at 389.  Nor would individual damages suits be "dispositive of the interests of" other Plan participants, as required for certification under Rule 23(b)(1)(B), because "no prejudice to [other participants] would result from the simple payment" of damages to Plaintiffs in this non-limited-fund case.  *Ortiz*, 527 U.S. at 837 n.17.

Plaintiffs' claims are indisputably monetary.  Their operative complaint expressly seeks "compensatory damages," among other "monetary relief."  JA39; JA87-88; JA90-91; JA93.  Their brief in support of class certification similarly focused on "damages."  JA148 n.3; JA150; JA155; JA159; JA164.  In fact, the district court noted that the "only"

non-declaratory relief Plaintiffs "currently" seek is "monetary damages," "because the claims for prospective" injunctive relief "were previously dismissed" for lack of standing since neither Plaintiff is a current plan participant (or employee).  JA446; *see supra* at 14-15.

Plaintiffs' monetary claims are also inherently individualized.  *See* JA445 n.2 (district court acknowledging that Plaintiffs seek "'individual damages'").  Genworth's Plan is an individual-account plan in which, as the district court noted, "each participant has an individual account" through which he can "elect[ ]" to "direct contributions into one or more investment options."  JA439.  As Plaintiffs themselves explained in their complaint, "[e]ach participant's account is credited with" funds based on how each of more than 4,000 participants chooses to "direct the investment of their contributions into various investment options offered by the Plan."  JA42; *see supra* at 9-10.  The gravamen of Plaintiffs' claims is that Genworth's selection of those investment options has caused "losses" to the "savings" accumulated by some (but not necessarily all) of those individuals' "account balances."  JA38; JA42; JA92.  Even among the participants who invested in the BlackRock TDFs, individual experiences varied relative to alternative funds depending on whether

and when they invested in a particular retirement date "vintage"—for example, the 2040 vintage, or the 2050 vintage (or, in Mr. Trauernicht's case, all of the above).  *See supra* at 13.

Plaintiffs accordingly concede in their complaint that determining and "allocat[ing]" the "amount of damages recovered by each Class member" "will be" an "individual issue[ ] of significance" in this litigation. JA87-88.  Among other factors, the amount of each participant's loss (or gain) from her investment choices will depend on distinctions including the "degree" to which she chose to invest in the BlackRock TDFs as opposed to other investments, which "different vintages" of TDFs she chose to invest in, when she first made those investments, and when she withdrew any funds from her account, relative to the market cycle. JA457; JA462; *see supra* at 9-11.

For example, as the district court acknowledged, named Plaintiff "Trauernicht may or may not have suffered losses to his individual account" because evidence in the record reflects, and Genworth intends to show at trial, that "Trauernicht's individual account" would have "performed worse" under Plaintiffs' analogous comparators, so that "Trauernicht was better off with the status quo, and he, therefore, has

suffered no financial harm." JA449-450. Similarly, the performance of Plaintiff Wright's investments is attributable to his individual "elect[ion] to transfer his assets from Genworth's Plan" at an inopportune time in the market cycle, so that "[h]ad Wright retained his retirement savings in the Plan through [a later date], he would have been better off invested in the BlackRock TDFs" after all. JA450 n.3. And because "all plan participants had the choice of when to contribute and withdraw[] from their accounts," an analogous, individualized inquiry will need to be conducted for each of the "thousands of individuals" included in the class. JA457; JA467.

For all these reasons, Plaintiffs' claims fall squarely within the category of individualized monetary claims that may not be certified in mandatory classes. The Supreme Court has used the term "individualized" in this context to denominate relief that would be *different* for "each individual class member," such as the "backpay" sought by employees claiming discriminatory treatment in *Dukes*. 564 U.S. at 360. Similarly, this Court has held that claims for "lost profits damages" are "'individualized'" for class-certification purposes where "each putative class member's claim for lost profits damages" would

require "proof of actual, individual damages." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342-43 (4th Cir. 1998) (reversing certification of "non-opt-out class," *id.* at 339); *see also Windham v. Am. Brands, Inc.*, 565 F.2d 59, 67 (4th Cir. 1977) (en banc) (rejecting class certification of damages claims rendered "individualized" "not simply by the necessity of individual proof and calculation but also by the variety of claims as asserted by the various plaintiffs"); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) ("it is impermissible to determine damages on a classwide basis in order to facilitate class treatment of a case when the governing law requires individualized proof of damages").

The Supreme Court in *Dukes* expressly reserved the broader question whether Rule 23 authorizes mandatory class certification of any "monetary claims at all," including non-individualized claims. 564 U.S. at 360. (Such "non-individualized" monetary relief might include "statutory damages" under laws providing that "every class member would be entitled uniformly to the same amount of statutory damages, set by rote calculation." *Berry*, 807 F.4th at 609-10.) But at a minimum, "claims for *individualized* relief"—such as backpay in *Dukes*, lost-profits damages in *Broussard*, or lost-investment-return damages in this case—

"do not satisfy the Rule," the Constitution, or the Rules Enabling Act's requirements for mandatory class certification. *Dukes*, 564 U.S. at 360.

## C. There Is No ERISA Exception To Rule 23.

This district court accordingly erred in certifying Plaintiffs' claims for individualized monetary relief in a "mandatory class under Rule 23(b)(1)," whose members will "not receive notice or opt-out rights." JA479. In carving out an ERISA-specific exception to the prohibition on such classes, the district court contravened precedent holding that "[t]here is no ERISA exception" to "commonsense" principles governing "class-action suit[s]." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540, 547 (2020). And in ignoring the essential difference between individual-account and defined-benefit ERISA plans, the district court neglected to "'focus on the written terms of the plan,'" which is the "'linchpin'" of the ERISA system. *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015).

The district court acknowledged all of the features of Plaintiffs' monetary claims that render them inherently individualized. *See supra* at 35-37. It recognized that, if Plaintiffs prevail on their claims at trial, the "monetary damages" they seek will be paid (or not) into each class

member's "individual accounts" depending on whether those individual members did or "did not suffer losses in their individual accounts" from Genworth's challenged conduct. JA446; JA463. It recognized that this individual inquiry may vary with "the timing of their investments or for other reasons," such as which particular TDF "vintage" participants chose to invest in. JA463. And it further agreed that "uninjured" class members will need to be "excluded from any recovery" when "it becomes necessary to allocate" damages to members' "specific accounts." JA462; JA463 n.6.

Those facts should have led the district court to deny mandatory class certification under controlling precedent holding that "individualized monetary claims belong in Rule 23(b)(3)," *Dukes*, 564 U.S. at 362, not Rule 23(b)(1), as this Court recognized in *Zimmerman*, 800 F.2d at 389. *See supra* at 27-33. But the district court honored that precedent only in the breach—asserting that it was not "constrained" by "precedent" because *Zimmerman* merely addressed what Rule 23(b)(1) "'*normally*'" allows, unlike the more robust "per se limitation" on damages classes the court said was imposed by the Ninth Circuit. JA478 (emphasis added by district court) (quoting *Zimmerman*, 800 F.2d at 389,

and citing *In re Syncor ERISA Litig.*, 227 F.R.D. 338 (C.D. Cal. 2005); *Zinser*, 253 F.3d 1180). And the district court dismissed as "not applicable" the Supreme Court's "holding" in *Dukes* that "'individualized monetary claims belong in Rule 23(b)(3).'" JA478. Instead, the district court relied primarily on a handful of district-court decisions, while dismissing the "cases that Genworth relies on." JA471-474; JA477-478.

The district court purported to justify its deviation from precedent by asserting that "[t]he derivative nature" of ERISA § 502(a)(2) claims "distinguish[es] them from individual claims for monetary relief." JA471. The court repeatedly relied on this supposedly "unique situation" under ERISA to conclude that "this is not a case for individualized monetary damages" because "in a § 502(a)(2) action, the recovery (monetary damages) inures *to the Plan as* [a] *whole* rather than to individual plaintiffs." JA477-479 (emphasis added).

But the district court's reasoning ignores the critical distinction between individual-account plans like Genworth's and traditional defined-benefit pension plans—a distinction of "decisive importance" in ERISA cases. *Thole*, 590 U.S. at 540; *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("it is essential to recognize the

difference between defined contribution plans and defined benefit plans"); *supra* at 7-9. The district court relied on inapposite cases involving defined-benefit plans, *see* JA474-476 (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)), where the "[r]ecovery" will indeed "inure to the benefit of the plan *as a whole*, not to particular persons with rights under the plan," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 (2008) (brackets and quotation marks omitted). But "the opposite" is true for defined-*contribution* plans, where Section 502(a)(2) permits individual participants to sue for damages to their "particular individual accounts." *Id.* at 250, 256.

In other words, the "references to the 'entire plan' in *Russell*" and other cases on which the district court relied "are beside the point in the defined contribution context." *LaRue*, 552 U.S. at 256; *see In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 214 (4th Cir. 2008) (explaining that *LaRue* "distinguished *Russell* on the basis that the *Russell* Court addressed a *defined benefit* plan rather than a *defined contribution* plan"). In plans like Genworth's, "each participant has an individual account," so Plaintiffs seek individualized damages to redress alleged "losses to their individual accounts." JA439; JA445 n.2; *see* JA462

(acknowledging that awarding damages will make it "necessary to allocate" funds to "specific accounts"). Accordingly, the district court's foundational assumption that "[a]ny" relief under ERISA § 502(a)(2) "inures to the Plan as [a] whole," JA471; JA478, is simply false in this case. Although ERISA fiduciary *duties* are owed to "a plan," 29 U.S.C. § 1109(a), the monetary *remedies* in a case such as this are for "plan assets in the participant's individual account"—*not* for the "entire plan[ ]," *LaRue*, 552 U.S. at 250.

Many courts have relied on this attribute of individual-account plans to hold that ERISA § 502(a)(2) cases cannot be certified under Rule 23(b)(1). In declining to certify a Rule 23(b)(1) class for fiduciary-breach claims in *In re Computer Sciences Corp. ERISA Litigation*, 2008 WL 7527874 (C.D. Cal. Sept. 2, 2008), the court explained that "[t]he Supreme Court's recent decision in [*LaRue*] cures any concern that the potential class members' claims would essentially be disposed of by this litigation"; "[b]ecause the putative class members have an individual remedy, they can pursue relief on their own behalf." *Id.* at *2. Other courts have found "the analysis in *Computer Sciences* persuasive" and followed suit. *E.g.*, *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610,

622 & n.12 (C.D. Cal. 2009) ("agree[ing] with the . . . defendants that *LaRue* cures any concern that the potential class members' claims would essentially be disposed of by this litigation").[6] The district court was wrong to dismiss these cases as not "persuasive." JA474.

The district court's own reasoning disproves its broad generalization that remedies for ERISA § 502(a)(2) claims for fiduciary breach always inure to the benefit of the entire Plan. In narrowing Plaintiffs' proposed class definition to exclude Plan participants who did not invest in the BlackRock TDFs at issue, the district court "agree[d]" with Genworth that these participants "have not suffered the same injury (if any injury) or do not possess the same interests as Plaintiffs." JA461; *see supra* at 17-18. But if the court were really correct that "[e]ach § 502(a)(2) claim is essentially identical for each participant" because

---

[6] *See also In re Fremont Gen. Corp. Litig.*, 2010 WL 3168088, at *6 (C.D. Cal. Apr. 15, 2010) (agreeing with the "persuasive" reasoning that *LaRue* forecloses Rule 23(b)(1) class certification); *Carr v. Int'l Game Tech.*, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012) (similar); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *13 (S.D.N.Y. Mar. 31, 2017) (finding Rule 23(b)(1)(B) certification of an ERISA § 502(a)(2) claim inappropriate in light of *LaRue*, among other problems); *Pantoja v. Edward Zengel & Son Express, Inc.*, 2011 WL 7657382, at *7-8 (S.D. Fla. Aug. 5, 2011) (similar).

Plaintiffs seek "recovery to the Plan as a whole," JA460; JA462, then there would be no need to exclude even these (obviously uninjured) participants—any more than the thousands of other participants who *did* invest in the BlackRock TDFs but "did not suffer losses in their individual accounts" and so were "uninjured" by that investment, yet who were still wrongly swept up in Plaintiffs' mandatory class, JA463 & n.6.

The district court's discussion of Rule 23(b)(1)(A) and (B) further illustrates how it mistakenly conflated individual-account and defined-benefit plans. The court suggested that these provisions justify mandatory class treatment because separate individual lawsuits against Genworth for damages could lead to "different compensation orders for the same account" or "'be dispositive of the interests of the other participants.'" JA472-473. But that is simply not possible in an individual-account plan like Genworth's, where two plaintiffs' individual damages claims *cannot* run to the same account because "each participant" has her own "individual account." JA439. This case is therefore not "distinguishable from one in which a defendant must pay different amounts of damages to different plaintiffs," which the district

court acknowledged is not appropriately certified as a mandatory class. JA472-473; *see supra* at 27-29.

If Rule 23 left any doubt as to this conclusion, the Constitution and the Rules Enabling Act would eliminate it. *See Amchem*, 521 U.S. at 613 ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act"); *Ortiz*, 527 U.S. at 842 (interpreting Rule 23(b)(1) so as to "minimize[] potential conflict with the Rules Enabling Act, and avoid[] serious constitutional concerns raised by the mandatory class resolution of individual legal claims"). The Due Process Clause and the Rules Enabling Act each independently forbid mandatory class certification of Plaintiffs' essentially individualized monetary claims. *Supra* at 31-33. To the extent that ERISA individual-account claims might be characterized as plan-wide in a "'narrow sense,'" *LaRue*, 552 U.S. at 252, that narrow characterization cannot defeat foundational constitutional and statutory principles, because "what matters" for constitutional purposes "is the substance of the suit," not "how it is labeled," *SEC v. Jarkesy*, 603 U.S. 109, 135 (2024); *see also NFIB v. Sebelius*, 567 U.S. 519, 544 (2012) ("Congress cannot change"

something's categorization "for *constitutional* purposes simply by describing it" another way).

## II. ERISA Fiduciary-Duty Claims Do Not Inherently Satisfy Rule 23(a)(2)'s Commonality Requirement.

The district court compounded the error of its ERISA-specific application of Rule 23(b)(1) by fashioning a similar *per se* rule that ERISA fiduciary-duty claims "inherently" satisfy Rule 23(a)(2)'s requirement of commonality.  JA458.

**A.**  Under Rule 23(a)(2), a class may be certified "only if . . . there are questions of law or fact common to the class."  The Supreme Court has cautioned that this "language is easy to misread, since [a]ny competently crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349 (brackets in original; some quotation marks omitted).  Properly construed, this requirement focuses not on "the raising of common questions—even in droves—but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (quotation marks omitted).

Among other things, therefore, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50; *see also Stafford v. Bojangles' Rests.,*

*Inc*, 123 F.4th 671, 681 (4th Cir. 2024) (vacating class certification where "the putative class is too overinclusive to ensure commonality" because "some class members may lack any . . . claim against [the defendant], and thus no question of law or fact is common with these individuals"). The requirement of a common injury "does *not* mean merely that [class members] have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350 (emphasis added). In this ERISA context, an "injury" means something that adversely "affect[s]" plaintiffs' "benefit payments" under the plan. *Thole*, 590 U.S. at 540-41.

Other courts have properly recognized that the commonality requirement applies with full force to ERISA fiduciary-duty claims. The court in *Bond v. Marriott International, Inc.*, 296 F.R.D. 403 (D. Md. 2014), denied certification of a putative ERISA class action for failure to establish commonality. As the court explained, commonality requires "'more . . . than merely some common aspects among class members,'" and is not satisfied where many plan participants "have no viable cause of action in this case" because they suffered no injury from the defendant's alleged conduct, giving rise to a "'conflict of interest'" that presents an

insuperable "'obstacle to class treatment.'" *Id.* at 408 (citing *Broussard*, 155 F.3d at 337).

More recently, the court in *Frankenstein v. Host International, Inc.*, 2024 WL 3362435 (D. Md. July 10, 2024), followed *Bond* in denying certification of an ERISA § 502(a)(2) class where "the commonality inquiry . . . conclusively shows that [the plaintiff's] claims are hardly common among the proposed class." *Id.* at *10. The court rejected the plaintiff's attempt to "gloss[ ] over the fact that many Plan participants who would be swept into his proposed class have not been injured at all." *Id.* at *9 (citing *Bond*, 296 F.R.D. at 408; *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991)). Although other ERISA fiduciary-breach cases might "meet the requirements for class certification," that was not so in *Frankenstein*, where the "presence of proposed class members who have not been injured by Defendants' conduct clearly undermine[d] any effort to establish commonality." *Id.*

**B.** In this case, too, the varied experience of different participants invested in different BlackRock "vintages" at different times meant that—when compared to the passive comparators proffered in Plaintiffs' class-certification papers—class members did not "'suffer[ ] the same

injury.'" *Dukes*, 564 U.S. at 350.  Beyond the variation between vintages, moreover, whether a given individual would have done better or worse utilizing a given fund also depends on each person's "timing and investment choices" in the BlackRock TDFs.  JA462; *see supra* at 36-37.

The district court, however, misapplied *Dukes*, ignored *Bond* and its progeny, and mistakenly held in a brief commonality discussion that "ERISA § 502(a)(2) actions *inherently* present issues common to the class because liability arises out of the defendant's conduct with respect to the plan[,] which does not vary depending on which participant brings the action."  JA458 (emphasis added).  This ignores *Dukes*' statement that class members must all share "'the same injury,'" 564 U.S. at 350, and the illustration in *Bond* and *Frankenstein*—and in the facts of this case— that in some putative ERISA class actions, it is quite possible that "some class members suffered no injury and some could be harmed by the requested relief."  *Bond*, 296 F.R.D. at 409; *see supra* at 39-40.

In holding that ERISA § 502(a)(2) claims automatically satisfy commonality, the district court "misread" Rule 23(a)(2) in precisely the way that the Supreme Court warned *against*:  the Rule is not satisfied merely because class members "have all suffered a violation of the same

provision of law." *Dukes*, 564 U.S. at 349-50.  That is the sort of "'30,000 foot view of commonality'" that "'Rule 23 does not allow for,'" as this Court recently confirmed.  *Stafford*, 123 F.4th at 680.  Moreover, to the extent the district court's reasoning relied solely on the actively managed American Funds in place of the passive comparators that Plaintiffs pleaded in their complaint—in conflict with its purported determination to "reserve[ ]" the choice of comparator "for trial," JA454—that reasoning runs squarely into a circuit split with cases that reject active comparators as inapposite to passive funds.  *Supra* at 19.

More broadly, a *per se* rule relaxing Rule 23(a)(2)'s requirements for this category of claims is inconsistent with overarching principles governing class certification.  The Supreme Court has instructed that a "class action is 'an *exception* to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" *Dukes*, 564 U.S. at 348 (emphasis added), and that Rule 23 "imposes stringent requirements for certification that in practice exclude most claims," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  These principles apply no less strongly in ERISA cases.  *E.g.*, *Peters v. Aetna Inc.*, 2 F.4th 199, 242 (4th Cir. 2021).  This Court should countenance "no

ERISA exception" for commonality, just as it has brooked no such exceptions in other contexts. *Thole*, 590 U.S. at 547; *supra* at 39.

Integral to the district court's decision was the unexamined assumption that uninjured class members "would not be harmed if Plaintiffs were to prevail" because they "would not have to pay back their gains" from Genworth's challenged investment. JA463-464. But ERISA entitles participants only to "'*contractually defined* benefits'" under the terms of the plan, *Hayes v. Prudential Ins. Co.*, 60 F.4th 848, 854 (4th Cir. 2023), not to an award of *more* net benefits (with the advantage of hindsight) than participants would have received had Genworth followed Plaintiffs' preferred alternative course. The district court cited no applicable precedent supporting its contrary, "heads I win, tails you lose" assumption, which conflicts with Plaintiffs' central theory of liability. Plaintiffs seek to put class members' individual accounts in the position they would have been had Genworth prevented *any* participants from investing in the BlackRock TDFs—their claims do not support a scenario under which participants would have chosen between the better

performing of the BlackRock funds and the best performing of Plaintiffs' multiple preferred alternatives. *See supra* at 20.[7]

Regardless whether the district court could rely on this unsupported no-refund theory to paper over intra-class conflicts, class certification here threatens other harms to class members that defeat commonality. In particular, as the Seventh Circuit reasoned in vacating certification of another ERISA class on commonality grounds, this class "risks depriving" absent class members of their "right to their own day in court" because a classwide judgment would impose *"res judicata* effect" on the entire class, "win or lose." *Spano v. Boeing Co.*, 633 F.3d 574, 584, 587 (7th Cir. 2011).

That concern is particularly pronounced here because the district court's reasoning threatens to preclude class members from attempting

---

[7] In depositions, both Plaintiffs actually disavowed their counsel's central theory that Genworth should have barred participants from investing in the BlackRock TDFs, and testified instead that "███████████ ████████████████████████████████████" and "████████" to "████████ ████████████████████████." JA643-644 But the district court brushed aside this "contradiction of [their] counsel's position" in finding Plaintiffs adequate class representatives, and certified a class based on their counsel's theory. JA468-469. Thus, a continued ability to invest in the BlackRock TDFs is not an option as the case has been framed by Plaintiffs' lawyers and the court below.

to establish losses using other, more suitable comparators—rather than relying solely on the actively managed comparator of the American Funds, which multiple circuits would deem an inappropriate benchmark as a matter of law. In their complaint and motion for class certification, Plaintiffs proffered *four* comparators. *See* JA50-54; JA449-452. Because these comparators' performance varied by vintage and by year, class members' individual damages would vary drastically depending on which comparator is ultimately selected for the calculation of damages, and which vintage a class member invested in, and when. JA679-685; *see supra* at 36-37. Genworth's opposition to class certification showed that these divergences undermined standing (since many class members, accounting for as much as 42% of the Plan's TDF assets, would receive no damages at all as measured against the passive comparators, *infra* at 58) and also demonstrated a lack of commonality. In addressing standing the district court said it was improper at the class-certification stage to decide on just one of Plaintiffs' proffered comparators, JA452-456, but in finding typicality and commonality the court inexplicably reversed course and relied on a single comparator, JA463—the American Funds, which Plaintiffs had made the focus of their summary-judgment papers and

which employ a fundamentally different "actively managed" investment strategy, JA449; JA452; *see supra* at 17.

The district court's reliance on the American Funds papered over the differences among class members for purposes of Rule 23(a), but created a conflict with the Sixth, Eighth, Ninth, and Tenth Circuits, which have all affirmed dismissal of ERISA claims on the ground that active funds (like the American Funds) are "inapt comparators" for passive funds (like the BlackRock TDFs). *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (not a "'meaningful benchmark'"); *accord Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020) ("apples and oranges"); *Matney v. Barrick Gold*, 80 F.4th 1136, 1153 (10th Cir. 2023) (similar); *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) (similar). The district court's rationale for class certification cannot be affirmed without creating a circuit split with these cases.

Moreover, to the extent reliance on this single comparator is driven by the desire of Plaintiffs' counsel to proceed on a class basis, that gamesmanship only underscores that Plaintiffs are not adequate class representatives. *See supra* at 53 n.7; *see Amchem*, 521 U.S. at 625 ("The

adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). Particularly, if the court later agrees with other circuits that Plaintiffs' American-Funds comparator is inapt as a matter of law and so rules for Genworth, then that judgment will preclude claims by class members who might prefer to base a claim on *other* comparators. *See Ortiz*, 527 U.S. at 847. Moreover, winners and losers among the class will change dramatically depending on the comparator selected. JA679-685 (demonstrating different performance across vintages of different comparators). Yet, the thousands of absent class members cannot opt out of this mandatory Rule 23(b)(1) class and risk being dragged down by a strategically driven certification theory based on a comparator that is inapt as matter of law in several circuits.

The sole case that the district court cited to support its view that ERISA fiduciary claims "inherently" satisfy commonality, JA458-459, does not support that extreme proposition. In *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006), the district court did not state that ERISA claims inherently present common issues, but rather purported to apply standard commonality "principles" to the specific "class

allegations" in that case, involving a single stock (U.S. Airways') rather than multiple "vintages" whose own holdings and resultant performance varies by vintage and over time. *Id.* at 78. The "slight divergence" the court saw in *DiFelice* between plaintiffs' claims and class members' regarding how best to "maximize[ ]" the recovery for each, *id.* at 79, is a far cry from the circumstances of this case, where Plaintiffs' theory threatens to produce *worse* results for many participants, *see supra* at 52-53. In any event, the certification ruling in *DiFelice* was "not challenged on appeal," *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 417 (4th Cir. 2007), and predated the pivotal Supreme Court decision in *Dukes*, which established that commonality "does not mean merely that" class members allegedly "have all suffered a violation of the same provision of law," *e.g.*, ERISA § 502(a)(2). 564 U.S. at 350.

## III. Plaintiffs Failed To Establish Class Members' Standing To Seek Damages.

The Supreme Court has held that "[e]very class member must have Article III standing in order to recover individual damages," while expressly reserving the "distinct question whether every class member must demonstrate standing *before* a court certifies a class." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 & n.4 (2021). "Based on *TransUnion*,"

this Court effectively answered that question in *Alig v. Rocket Mortgage, LLC*, 126 F.4th 965, 968 (4th Cir. 2025):  An order "certifying a class" must be "reverse[d]" where "plaintiffs have not established" that "'[e]*very class member*'" has standing to seek damages.  *Id.* at 968, 974, 976 (second alteration in original).   *Alig*'s holding, which accords with bedrock jurisprudential principles and persuasive case law, requires reversal here because the district court improperly declined even to *consider* whether any absent class members have standing before it certified a mandatory class.  JA445 n.2.[8]  That oversight is especially striking in a case where a large number of putative class members, accounting for as much as 42% of the Plan's TDF assets, experienced no harm even when their investment is benchmarked against some of Plaintiffs' proffered comparator funds.  *See supra* at 16.

**A.** In *Alig*, the district court certified a class of nearly 3,000 members, granted summary judgment for the plaintiffs on behalf of the class, and awarded compensatory and statutory damages.  126 F.4th at 967.  This Court initially largely affirmed, approving each of "the district

---

[8] As noted, *supra* at 4 n.1, the Supreme Court is expected to address this issue in *Laboratory Corp. v. Davis*.

court's decisions to grant class certification, grant summary judgment to Plaintiffs on [certain] claims, and award statutory damages," while rejecting the defendants' argument that "a significant number of the class members are uninjured and therefore lack standing." 990 F.3d 782, 791, 808 (4th Cir. 2021). But the Supreme Court vacated that decision and remanded for further consideration in light of *TransUnion*. 142 S. Ct. 748 (2022). This Court, in turn, remanded to the district court to "apply *TransUnion* to the facts of this case in the first instance." 52 F.4th 167, 168 (4th Cir. 2022) (per curiam). But on remand, the district court concluded that "'nothing in *TransUnion*' undermines the ability of the class members in this action to establish standing" and so reinstated its original judgment, "which included the certification of the class" as well as the award of damages. 126 F.4th at 972.

On appeal again, this Court reversed the district court's judgment "to the extent that it certified the class and awarded its members damages." *Alig*, 126 F.4th at 968. "Based on *TransUnion*," the Court "conclude[d] that the plaintiffs have not established that the class members . . . suffered a concrete harm as a result of the defendants'" challenged conduct, a "showing" that "*TransUnion* clearly requires" for

"*every class member*.'" *Id.* at 968, 975. Because the plaintiffs failed to make that individualized showing for every class member, this Court reversed both "the portion of the district court's judgment certifying a class" and the portion "awarding [the class] damages." *Id.* at 976.

*Alig* thus establishes that "certifying a class" without a showing that every class member has standing is reversible error—separate and apart from the error of "awarding [that class] damages." 126 F.4th at 976. In so ruling, *Alig* indicates the answer to the question reserved in *TransUnion* whether "every class member must demonstrate standing before a court certifies a class," in addition to at the "damages" stage. 594 U.S. at 431 & n.4 (emphasis omitted). Although *Alig* involved an appeal from a final judgment, its explicit reversal of "the portion of the district court's judgment certifying a class," in addition to the portion "awarding it damages," makes clear that the Court identified both those decisions as independently reversible errors. 126 F.4th at 976. Otherwise, if only the latter award of damages was error, then the *Alig* Court should simply have reversed that portion of the judgment and remanded for entry of judgment for defendants against the class, while leaving the certification intact. *Cf.*, *e.g.*, *Moreau v. Harris Cnty.*, 158 F.3d 241, 247 (5th Cir. 1998)

("We REVERSE the district court's grant of summary judgment in favor of the class and enter judgment for [the] defendants."), *aff'd sub nom. Christensen v. Harris Cnty.*, 529 U.S. 576 (2000). But instead, this Court deliberately went further and held that "certifying a class" with uninjured members is independently reversible error. *Alig*, 126 F.4th at 976.

**B.** In so holding, *Alig* accords with basic jurisprudential principles including key points the Supreme Court set forth in *TransUnion*. To start, "[a]s the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing," which they must "maintain" at "all stages of litigation" with the appropriate "'manner and degree of evidence.'" *TransUnion*, 594 U.S. at 430-31. Additionally, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431.

Moreover, these constitutional standing principles apply to all cases, "class action or not." 594 U.S. at 431 (quoting *Tyson Foods*, 577 U.S. at 466 (Roberts, C.J., concurring)); *see also Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024) ("The strictures of Article III

standing apply with no less force in the context of class actions."). That is because class actions are mere "methods for bringing about aggregation of claims." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 291 (2008). Classes are not—and under the Constitution and Rules Enabling Act, *cannot* be—"certified on the premise that [defendants] will not be entitled to litigate" defenses, such as lack of standing, that they could otherwise raise against members' "individual claims." *Dukes*, 564 U.S. at 367; *see supra* at 31-33. In other words, a "class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

Together, these principles dictate that a class cannot be certified that contains members without standing to seek monetary relief. In non-class cases involving "multiple plaintiffs," the Supreme Court has applied these principles to hold unanimously that each plaintiff "must have Article III standing in order to pursue relief that is different from that

which is sought by a party with standing"—which "includes cases in which both the plaintiff and the intervenor seek separate money judgments." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439-40 (2017). That "simple rule," which "follows ineluctably from" precedent, applies across a variety of "different" "context[s]," "whether [the additional] litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Id.* at 439. And because class certification is merely a "species" of traditional joinder, *Shady Grove*, 559 U.S. at 408, the same principles indicate that class members "seek[ing] separate money judgments" must also demonstrate standing in order to "join[] the lawsuit" and "pursue"—not just ultimately recover—that individualized relief, *Town of Chester*, 581 U.S. at 439-40; *cf. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc) (suggesting that *Town of Chester* dictates the answer to the timing question reserved in *TransUnion*); *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 770 (5th Cir. 2020) (Oldham, J., concurring) ("these venerable principles . . . apply with equal force at the class-certification stage").

In line with these principles, other courts have correctly held that classes cannot be certified absent a showing that all class members have Article III standing. For example, "[i]t is well established" in the Eighth Circuit and elsewhere "that a class must be defined 'in such a way that anyone within it would have standing.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018) (ultimately quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)); *see also*, *e.g.*, *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."); *Davis v. Cap. One, N.A.*, 2023 WL 6964051, at *3 (E.D. Va. Oct. 20, 2023) (narrowing proposed class because a court must "first," as a "preliminary matter," "ascertain for itself that 'every class member ... ha[s] Article III standing'"); 1 Newberg & Rubenstein on Class Actions § 2:3 & n.21 (6th ed.) (collecting additional cases). These persuasive authorities anticipate and lend further support to this Court's holding in *Alig*.

**C.** In this case, however, the district court reached the opposite result in a footnote that did not meaningfully engage the relevant principles (and that predated this Court's crucial decision in *Alig*).

The district court held that it was "incorrect" that plaintiffs must establish standing "prior to class certification" for any absent class members, as opposed to "only the class representatives." JA445 n.2. But rather than engaging that question in the first instance, the court asserted that it need not decide the issue because "the Fourth Circuit" had already "squarely held" the same (JA445 n.2) in *Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023), which is not correct. *Carolina Youth* did not cite *TransUnion* and did not purport to address this question—indeed, the defendant did "not directly assert" that class members lacked standing, 60 F.4th at 779, rendering the opinion's passing comments on that subject nonbinding *dicta*, *see United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). Moreover, this issue could not have arisen in *Carolina Youth* because that case involved claims for "injunctive relief," not damages. 60 F.4th at 779.

Regardless, *Alig* has now resolved this issue in a published decision squarely holding that "certifying a class" seeking damages on behalf of

uninjured class members is "revers[ible]" error. 126 F.4th at 976; *see supra* at 57-61. The district court here committed that very error by certifying a class that includes "uninjured class members" who "did not suffer losses," while asserting that those members "can be excluded from the recovery" at a later date. JA445 n.2; JA463 & n.6. Just as in *Alig*, this Court should reverse that erroneous class certification based on the principles identified in *TransUnion*.

## CONCLUSION

The Court should reverse the district court's class-certification order and remand the cases so that it may proceed on a non-class basis.

Dated: March 7, 2025                    Respectfully submitted,

                                        /s/ *Eugene Scalia*

Karl G. Nelson                          Eugene Scalia
Anna Casey                                  *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP             Max E. Schulman
                                        Alexi Ehrlich
2001 Ross Avenue, Suite 2100            GIBSON, DUNN & CRUTCHER LLP
Dallas, TX 75201                        1700 M Street, N.W.
Brian E. Pumphrey                       Washington, D.C. 20036
Heidi E. Siegmund                       (202) 955-8500
MCGUIREWOODS LLP                        EScalia@gibsondunn.com
Gateway Plaza
800 East Canal Street                   Jennafer M. Tryck
Richmond, VA 23219                      GIBSON, DUNN & CRUTCHER LLP
                                        3161 Michelson Drive, Suite 1200
                                        Irvine, CA 92612

*Counsel for Defendant-Appellant Genworth Financial, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because the brief contains 12,887 words, as determined by the word-count function of Microsoft Word 2019, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I hereby further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface of 14 points in New Century Schoolbook font.


Dated: March 7, 2025          */s/ Eugene Scalia*
                              Eugene Scalia
                              *Counsel for Genworth Financial, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2025, I caused a true and correct copy of this document to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users.

Dated: March 7, 2025

_/s/ Eugene Scalia_
Eugene Scalia
*Counsel for Genworth Financial, Inc.*