**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1880**

———————

PETER TRAUERNICHT, individually and as a representative of a class of similarly situated persons, on behalf of the Genworth Financial Inc. Retirement and Savings Plan; ZACHARY WRIGHT, individually and as a representative of a class of similarly situated persons, on behalf of Genworth Financial Inc. Retirement and Savings Plan,

Plaintiffs - Appellees,

v.

GENWORTH FINANCIAL INC.,

Defendant - Appellant.

-------------------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Robert E. Payne, Senior District Judge.  (3:22-cv-00532-REP)

———————

Argued:  October 21, 2025                    Decided:  March 10, 2026

———————

Before NIEMEYER, AGEE, and RICHARDSON, Circuit Judges.

———————

Class certification order reversed and vacated by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Richardson joined.

———————

**ARGUED:** Eugene Scalia, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. James Edward Miller, MILLER SHAH LLP, Chester, Connecticut, for Appellees. **ON BRIEF:** Karl G. Nelson, Anna Casey, Dallas, Texas, Max E. Schulman, Alexi Ehrlich, Washington, D.C., Jennafer M. Tryck, GIBSON, DUNN & CRUTCHER LLP, Irvine, California; Brian E. Pumphrey, Heidi E. Siegmund, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Glenn E. Chappell, TYCKO & ZAVAREEI LLP, Washington, D.C.; James C. Shah, Alec J. Berin, Philadelphia, Pennsylvania, Laurie Rubinow, MILLER SHAH LLP, Chester, Connecticut, for Appellees. Jennifer B. Dickey, Janet Galeria, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C.; Jaime A. Santos, Washington, D.C., Jesse Lempel, GOODWIN PROCTER LLP, Boston, Massachusetts, for Amicus Curiae.

NIEMEYER, Circuit Judge:

Peter Trauernicht and Zachary Wright, two former employees of Genworth Financial, Inc., a Delaware corporation headquartered in Richmond, Virginia, commenced this action against Genworth Financial on their own behalf and on behalf of a class of all others similarly situated, alleging that the company, as the sponsor of their defined contribution retirement plan, breached its fiduciary duties in selecting and retaining certain investment opportunities for the plan — namely, the BlackRock LifePath Index Funds — because those funds, as a whole, were imprudent investments. They brought their action under § 502(a)(2) and § 409(a) of the Employee Retirement Income Security Act ("ERISA"), seeking primarily the recovery of monetary losses.

On the plaintiffs' motion, the district court entered an order certifying a class under Federal Rule of Civil Procedure 23(b)(1) that consists of all participants in and beneficiaries of the plan whose individual accounts included investments in BlackRock LifePath Index Funds from August 1, 2016, to the day of judgment.

Pursuant to Genworth Financial's motion under Federal Rule of Civil Procedure 23(f), we granted Genworth Financial permission to appeal the district court's class certification order on an interlocutory basis.

Because we conclude that the plaintiffs' ERISA § 502(a)(2) claims brought in the context of a defined contribution plan are individualized monetary claims, we also conclude that they cannot be joined in a mandatory class certified under Rule 23(b)(1), with its absence of required notice and the inability of class members to opt out. Moreover, because the plaintiffs' and purported class members' individual circumstances differed

3

dramatically and all did not suffer the same injury, their claims do not satisfy the class action prerequisite of commonality, as required by Rule 23(a)(2). In particular, Genworth Financial demonstrated that many persons included in the class suffered *no* injury, as they fared better for having made their investments in the BlackRock LifePath Index Funds than they would have had they invested in an appropriate substitute fund. Accordingly, we reverse and vacate the district court's class certification order dated August 15, 2024.

I

Peter Trauernicht and Zachary Wright are former employees of Genworth Financial. Trauernicht left its employ in early 2022, and Wright, in 2019. While employed, each participated in the Genworth Financial, Inc. Retirement and Savings Plan (the "Genworth Financial Plan" or, simply, the "Plan"). Trauernicht elected to invest in three different vintages of the BlackRock LifePath Index Funds — the 2050 Fund, the 2040 Fund, and the Retirement Fund — while Wright elected to invest solely in the 2050 Fund. After each left employment with Genworth Financial, he withdrew his assets from the Plan.

The Plan is a "defined contribution" plan, which is substantially distinct from a "defined benefit" plan. A defined benefit plan holds and invests contributed funds from which it pays participants and beneficiaries a defined and fixed retirement income, typically based on their years of service and compensation. The benefit does not fluctuate with the value of the plan and is not dependent on the plan fiduciaries' good or bad investment decisions. By contrast, a "defined contribution" plan promises retirement income based on the value of each individual participant's account, and the amount of that

4

income is a function of the participant's and employer's contributions to the account, as well as its investment performance.

The Genworth Financial Plan includes individual retirement accounts for over 4,000 participants, and the aggregate value of those accounts was, during the relevant period, over $900 million. The Plan offers participants roughly a dozen investment options — in addition to Genworth Financial common stock — which participants may select "from the following risk/return profiles":

> Money Market (Short-Term Investment) Fund
> Stable Value Fund
> Intermediate-Term Bond Fund
> Balanced Fund
> Retirement Income Solution
> *Diversified Pre-mixed Portfolios (Target Date Funds)*
> Large Cap Value Fund
> Large Cap Blend Fund
> Large Cap Growth Fund
> . . .
> International Stock Fund
> Small Cap Value Fund
> Small Cap Growth Fund

(Emphasis added). The Plan's Investment Policy Statement explains, "The rationale supporting this set of choices is that these options should allow a participant to construct an investment program ranging from conservative to aggressive." And the Plan permits participants "to change investment options on a daily basis."

With respect to the Target Date Funds ("TDFs") investment option in particular, Genworth Financial offered the BlackRock Life Path Index Funds, a suite of funds geared to varying retirement dates that invest in passively managed funds that are generally

designed to track the performance of a particular index and that charge relatively low fees as a result. As a Plan document from 2016 explains:

> Lifestyle or pre-mixed portfolio funds are intended as investment solutions allowing Plan participants to match up their retirement dates and risk preferences with a single diversified fund. Each LifePath strategy is a broadly diversified portfolio, tailored to the investment time horizon of the investor. The name of each strategy represents the year when the investor will most likely begin to draw interest and/or principal out of his or her investment portfolio. The progression to less risky assets with the passage of time is a relatively steady process resulting in only minor monthly changes to the asset allocation. There are currently five LifePath strategies: LifePath 2050, LifePath 2040, LifePath 2030, LifePath 2020, and LifePath Retirement.

The BlackRock LifePath Index Funds have consistently received high ratings, including "Gold" (the highest rating) from Morningstar, a leading source of fund-industry analysis. In 2016, for example, the BlackRock LifePath Index Funds were one of only two target date funds to receive Morningstar's Gold rating.

In August 2022, Trauernicht and Wright commenced this class action, contending in their amended complaint that their investments in the BlackRock LifePath Index Funds performed "significantly worse" than other, similar investments that the Plan could have offered and that "[a] simple weighing of the merits and features of all other available TDFs at the beginning of the Class Period" — August 1, 2016 — "would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable and prudent option for the Plan." In particular, the complaint identified four alternative TDFs that the plaintiffs proffered as appropriate comparators — the Vanguard Target Retirement Funds, the Fidelity Freedom Index Funds, the T. Rowe Price Retirement Funds, and the American Funds. The first two of those proposed comparators, like the BlackRock

6

LifePath Index Funds, were "passive TDF suites" that invested in *passively* managed funds, while the latter two invested in *actively* managed funds. The complaint alleged that Genworth Financial breached the fiduciary duties it owed to the Plan by failing to appropriately monitor the performance of the BlackRock LifePath Index Funds, resulting in the imprudent retention of those funds in the Plan, in violation of ERISA. For relief, the plaintiffs requested declaratory and injunctive relief, as well as "remedial relief to return all losses to the Plan and/or for restitution and/or damages."

Genworth Financial filed motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court recognized that Trauernicht and Wright, as former participants in the Plan, lacked standing to obtain prospective relief and therefore dismissed their claim for injunctive relief pursuant to Rule 12(b)(1). It denied, however, Genworth Financial's motion under Rule 12(b)(6), concluding that the plaintiffs had adequately alleged plausible breach of fiduciary duty claims.

Shortly thereafter, the plaintiffs filed a motion to certify a class pursuant to Rule 23(b)(1) to consist of all Plan participants and beneficiaries from July 29, 2016, to the date of judgment. Following a hearing, the district court granted the plaintiffs' motion in a memorandum opinion dated August 15, 2024. As relevant here, the court found that all of Rule 23(a)'s prerequisites were satisfied after the court modified the scope of the class to include only those "Plan participants and beneficiaries whose accounts were invested in the BlackRock TDFs during the Class Period," which the court found to begin on August 1, 2016. With respect to Rule 23(a)(2) (requiring that there be "questions of law or fact

7

common to the class"), the court concluded that breach of fiduciary duty claims brought under ERISA § 502(a)(2) "*inherently* present[ed] issues common to [a] class because liability [arose] out of the defendant's conduct with respect to the plan which [did] not vary depending on which participant [brought] the action." (Emphasis added).

In addition, to justify certification under Rule 23(b)(1), the court relied on "[t]he *derivative nature* of [ERISA] § 502(a)(2) claims," observing that the plaintiffs were "suing under § 502(a)(2) in a representative capacity *on behalf of the Plan* for recovery *to the entire Plan* for losses allegedly caused by the inadequate monitoring and imprudent retention of the BlackRock TDFs." (Emphasis added). Based on this, the court concluded that "allowing individual suits to proceed alongside this plan-wide action could easily lead to incompatible standards of conduct for Genworth, thus satisfying Rule 23(b)(1)(A)." (Cleaned up). The court also held that certification was appropriate under Rule 23(b)(1)(B) because adjudication of the plaintiffs' breach of fiduciary duty claims would "involve the recovery and distribution of Plan assets on behalf of the Plan," such that the lawsuit's resolution "would, as a practical matter, be dispositive of the interests of the other participants' claims on behalf of the Plan." (Cleaned up). In explaining its ruling, the court agreed with Genworth Financial that "*individualized* monetary damages claims will normally not satisfy Rule 23(b)(1)'s requirements," and, indeed, that the Supreme Court had recognized that the certification of such claims under Rule 23(b)(1) "would raise due process concerns because putative class members would not receive notice or opt-out rights." But it held that "ERISA § 502(a)(2) claims are distinguishable from those types of cases because damages flow to the class in bulk rather than to individual claimants."

8

(Cleaned up).  In summary, the court stated, "*This is not a case for individualized monetary damages*.  It is a derivative lawsuit on behalf of the Plan for recovery to the Plan as a whole," which "makes mandatory certification under Rule 23(b)(1) appropriate because individual adjudications would be impossible or unworkable."  (Emphasis added) (cleaned up).

In its order, the court defined the class as follows:

> All participants and beneficiaries in the Genworth Financial Inc. Retirement and Savings Plan whose Plan accounts included investments in the BlackRock LifePath Index Funds at any time on or after August 1, 2016 and continuing to the date of judgment, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Genworth Financial filed a petition for permission to appeal the district court's order pursuant to Rule 23(f), which we granted by order dated September 16, 2024.

II

Genworth Financial contends first that the district court erred in "certifying a *mandatory* class under Rule 23(b)(1) for claims seeking *individualized* monetary relief."  (Emphasis added).  It notes that the Supreme Court has made clear that, because of the greater procedural protections that are provided when a class is certified under Rule 23(b)(3), "individualized monetary claims belong in Rule 23(b)(3)," not in a mandatory class certified under Rule 23(b)(1) or Rule 23(b)(2).  (Quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)).  It argues that this principle applies "squarely to the damages claims in this case, which are inherently individualized because they seek different (and in some cases, nonexistent) monetary relief based on the particular

performance of each class member's individual account" and that the district court, in ruling to the contrary, "ignore[d] the critical distinction between ERISA claims that involve individual-account plans, as here, versus defined-benefit plans."

The plaintiffs contend to the contrary that ERISA § 502(a)(2) and § 409(a) authorize them to bring a representative action on behalf of the Plan to recover *all losses sustained by the Plan* as a result of the alleged breach of fiduciary duty and that, as a result, claims under these sections are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." (Quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)). The plaintiffs acknowledge that if they were to obtain "recovery for the [P]lan," the recovery would ultimately have to be divided "among the participant accounts" according to each account's losses. But, they maintain, such division of the recovery would be "tangential to the core claim" and "does not transform these 'derivative' claims into individual damages claims." They argue further that, rather than raising due process concerns, class certification under Rule 23(b)(1) of an ERISA § 502(a)(2) claim that alleges a plan-wide injury and seeks corresponding plan-wide relief is "an acceptable procedural safeguard to ensure [that] the plan is properly represented and [that] both it and the fiduciary defendant are not subject to competing lawsuits by other interested participants."

The question thus presented is whether, given the context of a defined contribution plan, the plaintiffs' claims for monetary relief under ERISA § 502(a)(2) and § 409(a) for a breach of fiduciary duties allegedly causing losses to a large number of individual

retirement accounts in the Plan satisfy the requirements for certification of a mandatory class action under Rule 23(b)(1).

We begin with the nature of the plaintiffs' claims in order to determine whether they can be certified as a class action under Rule 23(b)(1).

First, we note that plaintiffs are seeking primarily monetary damages for Genworth Financial's selection and retention of the BlackRock Life Path Index Funds in the menu of investment options it offered to plan participants. Indeed, their claim for prospective relief was dismissed. They maintain that because those Funds were imprudent, the Plan is entitled to recover under ERISA § 502(a)(2) monetary losses for each plan participant's account — *i.e.*, the aggregate of all the gains participants would have earned had Genworth Financial instead offered a better target date fund suite.

ERISA § 502(a)(2) provides that a plan "participant, beneficiary or fiduciary" may bring a civil action "*for appropriate relief* under" ERISA § 409, 29 U.S.C. § 1132(a)(2) (emphasis added), and ERISA § 409, in turn, provides, as relevant here, that "[a]ny person who is a fiduciary with respect to a plan who breaches" a fiduciary duty imposed by the statute "shall be personally liable *to make good to such plan any losses to the plan* resulting from each such breach," *id.* § 1109(a) (emphasis added). Thus, under this portion of ERISA § 409(a), an ERISA fiduciary who breaches its duties is personally liable to the plan "*for damages*." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993) (emphasis added); *see id.* at 255 (recognizing that "monetary relief for all losses [an ERISA] plan sustained as a result of the alleged breach of fiduciary duties" "is nothing other than compensatory *damages*"). And when ERISA § 409(a) is combined with the cause of action

11

for "appropriate relief" created by ERISA § 502(a)(2), the two sections "allow for a derivative action to be brought by a retirement plan 'participant' on behalf of the plan to obtain recovery for losses sustained by the plan because of breaches of fiduciary duties." *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 210 (4th Cir. 2008); *Peters v. Aetna Inc.*, 2 F.4th 199, 215–16 (4th Cir. 2021) (same).  These provisions authorize such "derivative" claims with respect to both defined contribution plans and defined benefit plans.

As noted above, in a defined contribution plan, the assets of the plan are allocated to participants' individual accounts.  *See* 29 U.S.C. § 1002(34) (defining a "defined contribution plan" as a "plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account").  By contrast, in a defined benefit plan, the assets of the plan are held collectively and then are used to pay the defined and fixed benefits that the employer promised to plan participants.  *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540, 542–43 (2020).  With respect to either type of plan, "the text of § 409(a) characterizes the relevant fiduciary relationship as one 'with respect to [the] plan,'" and it is "the 'plan' [that is] the victim of any fiduciary breach and the recipient of any relief."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008).  But the scope of relief obtained by the plan varies considerably depending on whether the plan is a defined contribution plan or a defined benefit plan.

In the context of a defined benefit plan, where the plan assets are undifferentiated and held collectively in trust for the payment of defined and fixed retirement benefits, a

plan participant injured by a fiduciary's breach must, by necessity, seek losses on behalf of the plan *as a whole* — there is no other way "to make good to such plan [the] losses to the plan resulting from [the fiduciary] breach." 29 U.S.C. § 1109(a). A hypothetical illustrates how this works. Suppose that a fiduciary's egregious mismanagement of a defined benefit plan causes $100 million in losses to the plan, leading the plan to fail and its 1,000 participants not to receive a portion of their vested fixed pension benefits. Under ERISA § 502(a)(2), any one of those participants could bring a claim *on behalf of the plan* to force the fiduciary "to make good to [the] plan" the $100 million in losses caused by the breach. 29 U.S.C. §§ 1132(a)(2), 1109(a). Clearly, a plaintiff bringing such a claim could not, in his suit, simply seek a pro-rata share of the $100 million — *i.e.*, $100,000. Instead, the only "appropriate relief" that could be fashioned in such circumstances would be a judgment in favor of the plan for $100 million, which would then be used to pay, to the maximum extent possible, the defined and fixed benefits owed to the participants. Thus, this is a classic example of an "action[] charging 'a breach of trust by . . . [a] fiduciary [that] *similarly affect[s]* the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added) (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment).

But the structural features shaping the contours of relief for a defined benefit plan are not the same with respect to a defined contribution plan, where the plan assets are allocated to individual accounts, and a participant's "benefits [are] based solely upon the amount" held in his individual account. 29 U.S.C. § 1002(34). In that distinct context, a

13

plan participant can bring an ERISA § 502(a)(2) claim to seek monetary relief, *again on behalf of the plan,* for the losses sustained with respect to the plan assets *in his individual account*. And such recovery would be paid not to the plan generally, nor to the participant directly, but rather to the participant's *individual retirement account* based on the losses that particular account sustained as a result of the fiduciary breach.

Again, a hypothetical illustrates the point. Suppose that the fiduciary of a defined contribution plan breached its "duty of prudence by failing to properly monitor investments and remove [an] imprudent one[]," *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015), and that, when all the losses across the plan's 1,000 individual accounts were aggregated, the total loss resulting from the breach was $100 million. The loss, if any, to each individual account in the plan, however, would vary significantly depending on factors like how much money a participant had invested in the imprudent fund, how long he had held the investment, and the precise timing of when he had bought and sold. Thus, suppose further that Participant A's individual retirement account had sustained $250,000 in losses from the fiduciary breach, while some other participants — who happened, for example, to "buy low and sell high" — actually gained money as a result of the fiduciary's retention of the imprudent investment. Notwithstanding the plaintiffs' argument to the contrary, Participant A could not bring a suit on behalf of the plan to recover all $100 million in aggregate losses, to be paid in gross to the plan's fiduciary for subsequent distribution to affected accounts, including, eventually, $250,000 to Participant A's own account. Rather, the "appropriate relief" to which Participant A would be entitled would be the payment of $250,000 to his individual retirement account. While this claim for relief would still be an

action "*on behalf of the plan* to obtain recovery for losses *sustained by the plan* because of breaches of fiduciary duties," *In re Mut. Funds Inv. Litig.*, 529 F.3d at 210 (emphasis added), the scope of relief would be tailored to that necessary to redress fully the injury to the plan assets *held in the plaintiff's individual account*, thereby allowing other affected participants to bring similar § 502(a)(2) claims should they choose to do so. But critically, based on the nature of the "appropriate relief" available under ERISA § 502(a)(2) in the context of a defined contribution plan, the choice would belong to each individual participant, consistent with "our deep-rooted historic tradition that everyone should have his own day in court," or, at the very least, the ability to opt out of pursuing what is in essence an individualized monetary claim. *Ortiz*, 527 U.S. at 846–47 (cleaned up); *see also Wal-Mart*, 564 U.S. at 364 ("underscor[ing] the need for plaintiffs with individual monetary claims to decide *for themselves* whether to tie their fates to the class representatives' or go it alone").

Consequently, when ERISA § 502(a)(2) claims are brought in the context of a defined contribution plan, they are indeed "*individualized* monetary claims" and therefore cannot be joined, as we show below, in a mandatory class certified under Rule 23(b)(1). *Wal-Mart*, 564 U.S. at 362 (emphasis added); *accord, e.g.*, *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (recognizing that "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, . . . such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue"); *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 622 (C.D. Cal. 2009) (concluding that "participants in a defined contribution plan, such as the Plan here, [can] bring ERISA § 502(a)(2) claims

on their own behalf," such that "putative class members have an individual remedy"). *But see, e.g.*, *Cedeno v. Sasson*, 100 F.4th 386, 396 (2d Cir. 2024) (concluding, over dissent, that even with respect to defined contribution plans, ERISA § 502(a)(2) "contemplates plan-wide remedies, and only plan-wide remedies, to address certain breaches of fiduciary duties by plan fiduciaries").

To oppose this conclusion, the plaintiffs direct us to *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), and its progeny. In *Russell*, a participant in a *defined benefit* disability plan brought an action under ERISA § 502(a)(2) and § 409 for an improper lapse in the payment of benefits, seeking to recover personal compensatory damages. The Supreme Court, however, rejected her claim because she was seeking damages for herself, rather than for the plan. The Court explained that while "§ 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409," a proper "recovery for a violation of § 409 inures to the benefit of the plan *as a whole*." *Id.* at 140 (emphasis added). The Court emphasized that the text of ERISA § 409 focuses on "the relationship between the fiduciary and the plan as an entity," establishing remedies benefiting "solely the plan." *Id.* at 140–42. As it stated, "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect *the entire plan*, rather than with *the rights of an individual beneficiary*." *Id.* at 142 (emphasis added).

Relying on *Russell*, the plaintiffs argue that only the Plan *as a whole* can recover for Genworth Financial's breach of fiduciary duty, not an individual account holder, and therefore their recovery is not for *individualized* monetary claims. Their argument,

16

however, fails to fully reckon with the Supreme Court's subsequent decision in *LaRue*, where the Court applied the same ERISA provisions to a *defined contribution* plan and pointed out the critical difference between a defined benefit plan, as addressed in *Russell*, and the defined contribution plan before it in *LaRue*.

In *LaRue*, a participant in a defined contribution plan alleged that he had directed the plan's administrator "to make certain changes to the investments in his individual account" but that the administrator had failed to carry out the instructions, causing losses to the participant's individual account in the plan. 552 U.S. at 251. While the circuit court had relied on *Russell* to conclude that the participant did not have a claim with respect to his individual account, the Supreme Court reversed in light of the fact that a defined contribution plan was involved. As the Court explained, "when *Russell* was decided, the defined benefit plan was the norm of American pension practice." *Id.* at 255 (cleaned up). Since then, however, defined contribution plans had come to "dominate the retirement plan scene," and, for those plans, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. The Court concluded that "the 'entire plan' language from *Russell*, which appears nowhere in [ERISA] § 409 or § 502(a)(2), does not apply to defined contribution plans." *Id.* at 256. Rather, "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kinds of harms that concerned the draftsmen of § 409." *Id.* Thus, the Court held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct

17

from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets *in a participant's individual account*." *Id.* (emphasis added).

It is clear, therefore, that *Russell* and *LaRue*, taken together, establish that ERISA § 502(a)(2) and § 409(a) may apply differently depending on whether the retirement plan at issue is a defined benefit plan or defined contribution plan. In either case, "the relevant fiduciary relationship [is] one 'with respect to a plan,'" and "the 'plan' . . . [must be] the recipient of any relief." *LaRue*, 552 U.S. at 254 (quoting *Russell*, 473 U.S. at 140). As such, regardless of plan type, "§ 502(a)(2) does not provide a remedy for individual injuries" but only "plan injuries." *Id.* at 256. But in the context of a defined contribution plan, the assets in "a participant's individual account" are "plan assets." *Id*. Therefore, a single participant can bring an action on behalf of the plan to recover "for fiduciary breaches that impair the value of plan assets in [his] individual account." *Id.* What this recognizes is that in a defined contribution plan, several plaintiffs may end up bringing their own actions for the impairment of the value of the plan assets in their individual accounts, and any recovery would be payable to those individual accounts, not to the participants directly.

We thus conclude that in the context of a defined contribution plan, a participant's damages claim under § 502(a)(2) is an "individualized monetary claim." And when so considered, it is clear that a mandatory class action under Rule 23(b)(1) is inappropriate.

Rule 23(b)(1) provides,

A class action may be maintained if . . . (1) prosecuting separate actions by or against individual class members *would create a risk of*:

18

(A)    inconsistent or varying adjudications with respect to individual class members that would establish *incompatible standards of conduct* for the party opposing the class; or

(B)    adjudications with respect to individual class members that, as a practical matter, *would be dispositive of the interests of the other members* not parties to the individual adjudications *or would substantially impair or impede their ability to protect their interests.*

Fed. R. Civ. P. 23(b)(1) (emphasis added). Thus, the scope of this rule's application is limited. As the Supreme Court has recognized, the first of these two subsections — Rule 23(b)(1)(A) — "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (cleaned up). And with respect to Rule 23(b)(1)(B), the Court has stated that the provision "includes, for example, 'limited fund' cases . . . [where] numerous persons make claims against a fund insufficient to satisfy all claims." *Id.* Other "classic examples" of the type of risk of impairment that may justify certification under Rule 23(b)(1)(B) are "actions by shareholders to declare a dividend or otherwise to fix their rights, and actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Ortiz*, 527 U.S. at 833–34 (cleaned up) (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). Thus, whether under subsection (A) or (B), class actions properly certified under Rule 23(b)(1) "share [one of] the most

traditional justifications for class treatment — that individual adjudications would be *impossible or unworkable*." *Wal-Mart*, 564 U.S. at 361 (emphasis added).

Significantly, like a class certified under Rule 23(b)(2) but unlike one certified under Rule 23(b)(3), once a class is certified under Rule 23(b)(1), class members' participation is "mandatory," as "[t]he Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart*, 564 U.S. at 362; *see also* Fed. R. Civ. P. 23(c)(2). By contrast, Rule 23(b)(3) "allows class certification in a much wider set of circumstances but with greater procedural protections," including that, under that Rule, "class members are entitled to receive 'the best notice that is practicable under the circumstances' and to withdraw from the class at their option." *Wal-Mart*, 564 U.S. at 362.

In light of the three kinds of class actions, defined by Rules 23(b)(1), 23(b)(2), and 23(b)(3), the Supreme Court has instructed that "*individualized monetary claims belong in Rule 23(b)(3)*." *Wal-Mart*, 564 U.S. at 362 (emphasis added). This is because there are greater procedural protections attending Rule 23(b)(3) classes, which are considered unnecessary for proper Rule 23(b)(1) and Rule 23(b)(2) classes, but which are necessary when each class member has an "individualized claim for money." *Id*. at 363.

Importantly, the Court has also warned that there is a constitutional dimension to the principle against aggregating individualized damages claims as part of a mandatory class. As the Court explained, "In the context of a class action predominantly for money damages," the "absence of notice and opt out violates due process," providing "an additional reason not to read" the mandatory classes unduly broadly. *Wal-Mart*, 564 U.S.

at 363 (citing *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985)).  Similarly, the Court recognized in *Ortiz* that, given "our deep-rooted historic tradition that everyone should have his own day in court," damages claims may not be "gathered in a mandatory class," where "[t]he legal rights of absent class members" would be "resolved regardless of either their consent, or, in a class with objectors, their express wish to the contrary."  527 U.S. at 846–47.

Because an action for damages for an alleged breach of fiduciary duties under ERISA § 502(a)(2) and § 409(a) in the context of a defined contribution plan amounts to an "individualized monetary claim," *see Wal-Mart*, 564 U.S. at 362, the district court erred in joining such claims in a class action under Rule 23(b)(1).  *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (recognizing that a district court necessarily abuses its discretion "when it materially misapplies the requirements of Rule 23").

### III

Genworth Financial contends also that the district court "compounded the error of its ERISA-specific application of Rule 23(b)(1) by fashioning a similar *per se* rule that ERISA fiduciary-duty claims [under § 502(a)(2)] 'inherently' satisfy Rule 23(a)(2)'s requirement of commonality."  Rule 23(a)(2) provides that the party seeking class certification must demonstrate, as a prerequisite to such certification, that "there are questions of law or fact common to the class."

The district court's conclusion about commonality rested on the same assumption that it made with regard to its certification of a Rule 23(b)(1) class — that ERISA

§ 502(a)(2) claims are *inherently* common.  More particularly, the court concluded that § 502(a)(2) claims "*inherently* present issues common to [a] class because liability arises out of the defendant's conduct with respect to the plan which does not vary depending on which participant brings the action."  (Emphasis added).  But this generalized conclusion fails to recognize, as we conclude in Part II above, that plaintiffs' claims in the context of a defined contribution plan are "individualized monetary claims" made against the fiduciary on behalf of the plan with respect to individual accounts in the plan.  And given that these are individualized claims, the district court needed to conduct a rigorous analysis to determine whether members of the class suffered the same injury, as required for finding commonality under Rule 23(a)(2).

The commonality prerequisite requires the showing of "a common contention" that is "of such a nature that it is capable of classwide resolution," meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350; *see id.* ("What matters to class certification is not the raising of common 'questions' — even in droves — but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation" (cleaned up)).  Moreover, the Court has pointed out that, in any event, Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members have suffered *the same injury*."  *Id*. (emphasis added) (cleaned up).  "This does not mean merely that they have all suffered a violation of the same provision of law."  *Id.*  Rather, a given statute "can be violated in many ways," and, "[q]uite obviously, the mere claim by" the plaintiff that he and others purportedly similarly situated have all suffered an injury caused by the

defendant's violation of that statute "gives no cause to believe that all their claims can productively be litigated at once." *Id.* Finally, the Court has also stressed that prior to certifying any class, a district must conduct a "rigorous analysis" to assure itself that the plaintiffs have not merely pleaded facts suggesting that commonality is satisfied but that they have "affirmatively demonstrate[d]" that they are "prepared to prove that there are *in fact* . . . common questions of law or fact," including that the members of the proposed class "have suffered the same injury." *Id.* at 350–51 (cleaned up).

In this case, the plaintiffs alleged injury by comparing the performance of the BlackRock LifePath Index Funds to four comparator funds — two that invest in actively managed funds and two that invest in passively managed funds. Genworth Financial argued, however, that because the BlackRock LifePath Index Funds were passive funds, they must be compared only to the two passive comparators that the plaintiffs identified in their complaint as appropriate substitutes — the Vanguard Target Retirement Funds and Fidelity Freedom Index Funds. *See Smith v. CommonSpirit Health*, 37 F.4th 1140, 1167 (6th Cir. 2022) (noting that actively managed funds and passively managed funds have "distinct goals and distinct strategies, *making them inapt comparators*" (emphasis added)); *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (reasoning that index funds and actively managed portfolios "have different aims, different risks, and different potential rewards that cater to different investors," such that the comparison is like "[c]omparing apples to oranges"); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581–82 (7th Cir. 2022). And Genworth Financial pointed out that when such comparison is made, the record shows that there were many members of the class who suffered no injury as the result of

23

Genworth Financial's alleged fiduciary breach. Indeed, the two passive comparator funds *underperformed* the BlackRock LifePath Index Funds during the class period for three separate vintages — the 2050 Fund, the 2060 Fund, and the Retirement Fund — which accounted for as much as 42% of the Plan assets invested in the BlackRock LifePath Index Funds. Thus, Genworth Financial concluded that, because many purported class members suffered no injury, they did not suffer the same injury, as necessary for commonality. *See Wal-Mart*, 564 U.S. at 350; *see also Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 681 (4th Cir. 2024) (recognizing that a "putative class [was] too overinclusive to ensure commonality" where "some class members may lack *any* . . . claim against [the defendant]," such that "no question of law or fact [would be] common with these individuals" (emphasis added)); *Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327, 332 (2025) (Kavanaugh, J., dissenting from dismissal of writ as improvidently granted) (explaining that, as "Rule 23 and this Court's precedents" make clear, "federal courts may not certify a damages class under Rule 23 when, as here, the proposed class includes both injured and uninjured class members" because, "if there are members of a class that aren't even injured, they can't share the same injury with the other class members" (cleaned up)).

When the district court confronted this evidence and the parties' dispute, it postponed the necessary rigorous analysis of commonality, concluding that it did not need to resolve the parties' dispute regarding appropriate comparators "at this juncture." The court, instead, relied on what it described as the "inherent" commonality of § 502(a)(2) claims. This approach was error.

Because the district court could not rely on "inherent commonality," as we have noted, it had to conduct a rigorous analysis as to the class action prerequisite of commonality and resolve whether, when determining injury, the BlackRock LifePath Index Funds, which are passive funds, could appropriately be compared to active funds, as the plaintiffs maintain.

Moreover, a rigorous analysis of commonality would also have required the court to address whether class members suffered different injuries resulting from their different circumstances arising in the context of a defined contribution plan. The record shows that each plaintiff, as well as each class member, participated in the plan in a materially different way. Each participant made his or her own investment decisions with respect to his or her individual account, and the participant could change that decision on any given day. Moreover, the participants selected different vintages of the BlackRock LifePath Index Funds at different times during different market conditions. And the different BlackRock TDF vintages carried different risks, depending on the retirement date selected. Finally, each participant withdrew assets from the Plan at different times. And during these times, the market performed uniquely each day.

The district court thus failed to address commonality with any particularity — relying instead on a perceived "inherent" commonality that Genworth Financial's fiduciary breach was with respect to the Plan. This overgeneralized approach failed to recognize that a given statute "can be violated in many ways," and, "[q]uite obviously, the mere claim by" the plaintiffs that they purportedly suffered similar injuries "gives no cause to believe that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350.

25

Therefore, we conclude that the district court also legally erred — and thus abused its discretion — in finding satisfied the commonality prerequisite necessary for class certification.

*          *          *

For the reasons given, we reverse and vacate the district court's order dated August 15, 2024, certifying a class action.

REVERSED AND VACATED