No. 24-1880

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

PETER TRAUERNICHT and ZACHARY WRIGHT, individually
and as representatives of others similarly situated, on behalf of the
GENWORTH FINANCIAL, INC. RETIREMENT AND SAVINGS PLAN,

*Plaintiffs-Appellees*,

v.

GENWORTH FINANCIAL, INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 3:22-cv-532 (Hon. Robert E. Payne)

## PLAINTIFFS-APPELLEES' PETITION FOR REHEARING *EN BANC*

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103

James E. Miller
  *Counsel of Record*
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
(866) 540-5505
jemiller@millershah.com

*Counsel for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF THE CASE.................................................................................... 3

ARGUMENT .............................................................................................................. 5

I.     The panel's holding that a § 502(a)(2) claim is a claim for "individualized monetary damages" conflicts with Supreme Court precedent and decisions of this Court and several other Circuits ......................................... 5

II.    The panel's commonality holding conflicts with Supreme Court precedent and creates a Circuit split ............................................................... 11

III.   The panel's opinion will have unworkable consequences ........................... 14

CONCLUSION ......................................................................................................... 16

CERTIFICATE OF SERVICE ....................................................................................I

CERTIFICATE OF COMPLIANCE.......................................................................... II

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
   725 F.3d 803 (7th Cir. 2013) ...................................................................13

*Boley v. Universal Health Servs., Inc.*,
   36 F.4th 124 (3d Cir. 2022) .............................................................*Passim*

*Borst v. Chevron Corp.*,
   36 F.3d 1308 (5th Cir. 1993) ..................................................................11

*Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Va.*,
   876 F.Supp. 809 (E.D. Va. 1995) ...........................................................10

*Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
   919 F.3d 763 (4th Cir. 2019) ....................................................................8

*Cedeno v. Sasson*,
   100 F.4th 386 (2d Cir. 2024) ..................................................................8, 9

*Coan v. Kaufman*,
   457 F.3d 250 (2d Cir. 2006) ...................................................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..................................................................................13

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) ...............................................................13

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ....................................................................3

*Harrison v. Envision Mgmt. Hdlg., Inc. Bd. of Dir.*,
   59 F.4th 1090 (10th Cir. 2023) .................................................................8

*Hawkins v. Cintas Corp.*,
   32 F.4th 625 (6th Cir. 2022) .................................................................9, 15

*Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*,
  72 F.4th 499 (3d Cir. 2023) ...................................................................8, 9

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022) ....................................................................................3

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ......................................................................13

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
  702 F.3d 364 (7th Cir. 2012) ....................................................................10

*Knight v. Lavine*,
  2013 WL 427880 (E.D. Va. Feb. 4, 2013) ................................................16

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008) ...........................................................................*Passim*

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 130 (1985) ...........................................................................*Passim*

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ......................................................................12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022)......................................................................13

*Parker v. Tenneco, Inc.*,
  114 F.4th 786 (6th Cir. 2024)......................................................................8

*Parrott v. Int'l Bancshares Corp.*,
  167 F.4th 728 (5th Cir. 2026) .....................................................................8

*Peters v. Aetna Inc*,
  2 F.4th 196 (4th Cir. 2021) ............................................................... 1, 2, 7

*Platt v. Sodexo, S.A.*,
  148 F.4th 709 (9th Cir. 2025)......................................................................8

*Ramos v. Banner Health*,
  1 F.4th 769 (10th Cir. 2021).....................................................................15

*Rose v. PSA Airlines, Inc.*,
  80 F.4th 488 (4th Cir. 2023) ......................................................................7

*Sims v. BB&T Corp.*,
  2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ...................................12

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) ......................................................................8

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) .....................................................................14

*Tracey v. Massachusetts Inst. of Tech.*,
  2019 WL 1005488 (D. Mass. Feb. 28, 2019) ...................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................ 2, 10, 11, 14

*Williams v. Centerra Grp., LLC*,
  579 F. Supp. 3d 778 (D.S.C. 2022) ......................................................10

*Williams v. Shapiro*,
  161 F.4th 1313 (11th Cir. 2025) ...........................................................8, 9

*Wilmington Shipping Co. v. New England Life Ins. Co.*,
  496 F.3d 326 (4th Cir. 2007) .....................................................................8

**Statutes**

29 U.S.C. § 1109(a) ...............................................................................................4

29 U.S.C. § 1132(a)(2) ......................................................................................4, 10

**Rules**

Fed. R. App. P. 40(b) ............................................................................................1

Fed. R. Civ. P. 23 ....................................................................................................2

Fed. R. Civ. P. 23(a) .............................................................................................. 2

Fed. R. Civ. P. 23(b) ...................................................................... 1, 2, 4, 15

**Other Authorities**

2 Newberg and Rubenstein on Class Actions § 4:21 (6th ed.) ................................. 1

**INTRODUCTION**

Plaintiff-Appellees ("Plaintiffs") seek rehearing *en banc*. The full Court should review the panel's decision reversing and vacating class certification in this Employee Retirement Income Security Act ("ERISA") action because the decision conflicts with authoritative decisions of the Supreme Court, this Court, and several other Courts of Appeals, and the case presents questions of exceptional importance. *See* FED. R. APP. P. 40(b).

One of the first principles of ERISA's remedial structure is that § 502(a)(2) establishes a representative cause of action whereby an individual participant may bring suit on behalf of a plan to enforce the fiduciary duties in § 409. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *see also Peters v. Aetna Inc.*, 2 F.4th 199, 215-16 (4th Cir. 2021) ("§ 502(a)(2) specifically allows for a derivative action" by a "participant on behalf of the plan to obtain recovery for losses under § 409 sustained by the plan because of breaches of fiduciary duties.") (cleaned up). This is because ERISA's fiduciary duties run to a plan and its remedies are provisioned to a plan. *See Russell*, 473 U.S. at 140 (citing 29 U.S.C. § 409). Consequently, breach of fiduciary duty claims brought under § 502(a)(2), including in the context of defined contribution plans, are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 136 (3d Cir. 2022); *see also* 2 Newberg and

Rubenstein on Class Actions § 4:21 (6th ed.) (same). The panel's holding that, for defined contribution plans, § 502(a)(2) claims are "individualized monetary claims," and, therefore, can *never* be joined in a class under Rule 23(b)(1) breaks from the unanimous treatment of such claims across federal courts. *See infra* § I.

The panel's decision also deviates from the commonality inquiry established by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and its progeny, as well as the application of Rule 23(a) by several Circuits. *Wal-Mart* explains that commonality exists when the claims of putative class members "depend upon a common contention" that is "capable of classwide resolution." 564 U.S. at 350. This Court has found that questions of whether a defendant is a fiduciary, whether they breached their duties to a plan through a plan-wide action, and whether their breach harmed the plan are common questions because they "generate common answers apt to drive the resolution" of the defendant's liability. *Peters*, 2 F.4th at 243 (citing *Wal-Mart*, 564 U.S. at 350). This applies no less to Rule 23(a)'s prerequisites where a participant in a defined contribution plan alleges imprudence in connection with the retention of an investment option in the plan. *See Boley*, 36 F.4th at 134-35 (finding the "common allegation" of the defendant's "imprudence in managing the Plan's funds [] is comparably central" to all class members) (cleaned up). It is also well-settled that "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality."

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427-28 (4th Cir. 2003).

Contrary to these principles (and the factual record), the panel adopted a first-of-its-kind standard that would imperil certification whenever class members suffer different amounts of damages. *See infra* § II.

If the decision stands, this Circuit's law will conflict with ERISA's text, Supreme Court precedents, and prior decisions of this Court and other Circuits.

## STATEMENT OF THE CASE

Plaintiffs are former employees of Genworth and former participants in the Genworth Retirement and Savings Plan (the "Plan"), a defined contribution plan. Doc. 70, Panel Opinion ("Op.") at 3-5.[1] Genworth sponsors the Plan and is a fiduciary charged with selecting the investments offered to Plan participants. *Id.*

Plaintiffs' central claim is that Genworth breached its fiduciary duties by failing to appropriately monitor the Plan's investments, resulting in the imprudent retention of the BlackRock LifePath Index Funds ("BlackRock TDFs"), a series of

---

[1] In defined contribution plans, participants "maintain individual investment accounts" funded by pretax contributions from their salaries any matching contributions from their employer. *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022). "Each participant chooses how to invest her funds, subject to an important limitation: She may choose only from the menu of options selected by the plan administrators, i.e., respondents." *Id.*

target date funds ("TDFs"),[2] in the Plan. *Id.* at 5-7. They brought their claims under §§ 409(a) and 502(a)(2). *Id.* at 7-8. Under § 409(a), a fiduciary who breaches their duties "shall be personally liable to make good to such *plan* any losses to the *plan* resulting from each such breach, and to restore to such *plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary[.]" 29 U.S.C. § 1109(a) (emphasis added). Under § 502(a)(2), a participant may bring a civil action for relief under § 409. *See* 29 U.S.C. § 1132(a)(2).

After full discovery, the District Court certified the following class under Rule 23(b)(1)(A), and, alternatively, 23(b)(1)(B):

> All participants and beneficiaries in the [Plan] whose Plan accounts included investments in the BlackRock LifePath Index Funds at any time on or after August 1, 2016 and continuing to the date of judgment, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

*Id.* at 7-9. Soon after, the District Court denied Genworth's summary judgment motion.

The panel reversed and vacated the class certification order, citing two basic grounds. First, the panel held that certification under Rule 23(b)(1) was improper

---

[2]TDFs are sold to retirement plans as suites, such that plans do not obtain single vintages from different providers. Thus, a suite of target date funds is functionally selected and monitored as a *single investment alternative*. *See Boley*, 36 F.4th at 132.

because the participants' § 502(a)(2) claims sought "individualized monetary damages." Op. at 9-21. Second, the panel held that, because § 502(a)(2) claims are individualized monetary claims, the District Court should have more rigorously reviewed the loss attributable to each class member to determine whether commonality exists. *Id.* at 21-26.

## ARGUMENT

**I.** **The panel's holding that a § 502(a)(2) claim is a claim for "individualized monetary damages" conflicts with Supreme Court precedent and decisions of this Court and several other Circuits**

In *Russell*, the Supreme Court made clear that § 502(a)(2) claims are representative in nature, explaining that "recovery for a violation of § 409 inures to the benefit of the plan as a whole." 473 U.S. at 140 (finding "this contention supported by the text of § 409, by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of a beneficiary."). Indeed, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142. "Consistent with this objective," § 502(a)(2) is structured to reflect "Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." *Id.* at 142 n.9.

Nearly two decades later, in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), the Supreme Court addressed the application of §§ 409 and 502(a)(2) in the context of a defined contribution plan. In *LaRue*, a defined contribution plan participant alleged that he had directed the plan's administrator to make certain changes to the investments in his plan account, and the administrator failed to do so, causing losses in only the plaintiff's account. *See* 552 U.S. at 251. Although the court of appeals rejected the action based on *Russell*, the Supreme Court reversed, holding the plaintiff could bring an action based on these losses. *See id.* at 251-52. The Court addressed the difference between a defined benefit plan and defined contribution plan to support its finding that, for a defined contribution plan, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255-56.[3] Considering this distinction, the Court held, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256. Siezing

---

[3]Unlike a defined contribution plan, a defined benefits plan "generally promises the participant a fixed level of retirement income." *LaRue*, 552 U.S. at 250 n.1. As the Court recognized, "[d]efined contribution plans dominate the retirement plan scene today." *Id.* at 255.

on this language, the panel concluded that § 502(a)(2) claims are "individualized monetary claims." Op. at 18.

Based on *LaRue*'s statement that "the assets in a 'participant's individual account' are 'plan assets,'" the panel found that "several plaintiffs may end up bringing their own actions for the impairment of the value of the plan assets in their individual accounts, and any recovery would be payable to those individual accounts[.]" Op. at 18 (quoting *LaRue*, 552 U.S. at 254). According to the panel, this means that a participant has a "damages claim under § 502(a)(2)," and the claim "is an 'individualized monetary claim.'" *Id.* at 18, 21. In short, the panel's decision not only authorizes participants to bring separate individual damages claims against plan fiduciaries under §§ 409 and 502(a)(2) for retaining imprudent investments, but mandates that approach *exclusively*.

This upends the twin principles that a § 502(a)(2) claim must be brought in a representative capacity on behalf of a plan for injuries to the plan and any recovery inures to that plan—principles this Court has consistently observed since *Russell* and after *LaRue*. *See, e.g.*, *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 494 (4th Cir. 2023) ("§ 502(a)(2) allows plan participants to bring a derivative action to enforce § 409" and "recovery under § 502(a)(2) goes to the plan, not to the beneficiary bringing the action"); *Peters*, 2 F.4th at 216 ("Any recovery under § 502(a)(2) would go to the Plan, as a plan participant may not sue under ERISA § 502(a)(2)

7

unless she seeks recovery on behalf of the plan") (quoting *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 334 (4th Cir. 2007)) (cleaned up).[4]

Nearly every Circuit has found *LaRue* does not disturb the principle that § 502(a)(2) provides a remedy for plan injuries, not individual monetary claims—even with defined contribution plans. *See, e.g.*, *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024); *Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 507-08 (3d Cir. 2023); *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 739-40 (5th Cir. 2026); *Parker v. Tenneco, Inc.*, 114 F.4th 786, 795-96 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1060 (2025); *Spano v. The Boeing Co.*, 633 F.3d 574, 579-81, 586 (7th Cir. 2011); *Platt v. Sodexo, S.A.*, 148 F.4th 709, 721 (9th Cir. 2025); *Harrison v. Envision Mgmt. Hdlg., Inc. Bd. of Dir.*, 59 F.4th 1090, 1111 n.7 (10th Cir. 2023); *Williams v. Shapiro*, 161 F.4th 1313, 1321-22 (11th Cir. 2025). These courts have explained "[§ 409] provides relief singularly to the plan rather than an individual plaintiff, and [§ 502(a)(2)] claims are understood as claims 'brought in a representative capacity on

---

[4]In a case involving an Employee Stock Ownership Plan (a type of defined contribution plan) brought by a participant, this Court affirmed a calculation and award of losses to the *plan*. *See Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019). Even though each participant had a separate plan account, the recovery was awarded to the plan in recognition of the derivative nature of a § 502(a)(2) claim. *See id.*

behalf of the plan as a whole." *Shapiro*, 161 F.4th at 1321 (cleaned up). In fact, the Second Circuit has directly rejected the panel's idea that *LaRue* means § 502(a)(2) claims related to a defined contribution plan are necessarily individualized:

> The *LaRue* Court thus recognized that Section 409(a) protects against breaches of fiduciary duty involving the management of assets within defined contribution plans, whether the injury is felt at the plan level or directly at the individual account level, and that such breaches are thus actionable under Section 502(a)(2). But the Court also held firm to its conclusion in *Russell* that even in such cases, Section 502(a)(2) provides no remedy for "individual injuries distinct from plan injuries."
>
> The dissent's suggestion that *LaRue* in any way abrogated *Russell*'s holding that section 502(a)(2) provides a remedy only for injuries to the plan [] is thus squarely at odds with the Supreme Court's own holding. At most, *LaRue* recognized that Section 502(a)(2) provides a remedy for injuries to the plan that are felt only at an individual account level; *the Court did not suggest that Section 502(a)(2) allows individualized relief for injuries that are felt at the plan level.*

*Cedeno*, 100 F.4th at 399 (citations omitted and emphasis added). Thus, § 409 "does not limit restitution to the plaintiff's losses: it 'permit[s] recovery of *all* plan losses caused by a fiduciary breach.'" *Henry*, 72 F.4th at 507 (quoting *LaRue*, 552 U.S. at 261 (Thomas, J., concurring)) (emphasis in original); *see also Hawkins v. Cintas Corp.*, 32 F.4th 625, 634 (6th Cir. 2022) ("Interpreting the claim as

9

belonging to the individual, rather than the Plan, appears to conflict with

*LaRue*[.]").[5]

For largely the same reasons, courts have found § 502(a)(2) claims, even those seeking monetary recovery for a defined contribution plan, are fundamentally equitable claims to which no jury right attaches. *See Williams v. Centerra Grp., LLC*, 579 F. Supp. 3d 778, 784 (D.S.C. 2022) ("Because the monetary remedy Plaintiffs seek here—recovery of losses to the plan caused by the Defendants' breach of duty—is analogous to a claim against a trustee for breach of duty, the court finds that it is equitable in nature[.]"); *see also Tracey v. Massachusetts Inst. of Tech.*, 2019 WL 1005488, at *3 (D. Mass. Feb. 28, 2019) (same). Courts within this Circuit reach this conclusion because "under § 1132(a)(2), any entitlement to monetary relief necessarily turns upon whether or not the fiduciary has breached its ERISA duties; thus, any relief sought is necessarily intertwined with the equitable process of resolving the ultimate issue[.]" *Broadnax Mills, Inc. v. Blue Cross and*

---

[5]In a § 502(a)(2) action challenging the retention of an investment in a defined contribution plan, the liability determination is made at the plan-level. Accordingly, the "limitation" in *Wal-Mart* referring to "'individualized' awards of monetary damages" (*i.e.*, "awards based on evidence specific to particular class members") does not apply. *Johnson v. Meriter Health Servs. Emp. Ret. Plan,* 702 F.3d 364, 370 (7th Cir. 2012). If "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program . . . the district court can award that relief without terminating the class action[.]" *Id.*

*Blue Shield of Va.*, 876 F.Supp. 809, 816 (E.D. Va. 1995) (citing *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1993)).

## II.     The panel's commonality holding conflicts with Supreme Court precedent and creates a Circuit split

In *Wal-Mart*, the Supreme Court made clear that commonality exists where the claims of all putative class members "depend upon a common contention" that is "capable of classwide resolution." 564 U.S. at 350. Cases challenging the retention of an investment in a defined contribution plan present multiple common question.

The panel erroneously held the District Court's commonality determination was insufficiently rigorous because it relied on the assumption that § 502(a)(2) claims "inherently present issues common to a class," and failed to consider supposed differences in participants' injuries. Op. at 21-22 (cleaned up).[6] A threshold problem with the panel's reasoning is, once again, that § 502(a)(2) actions are premised on injuries *to a plan*. Thus, the question of whether a plan fiduciary injured a plan is common to all participants who, under § 502(a)(2), may

---

[6]This conclusion simply ignores numerous material common questions identified by the District Court: "(1) whether [Genworth] was a fiduciary;" (2) whether [Genworth] breached its duties to the Plan by failing to conduct an appropriate investigation into the continued investment in the BlackRock TDFs; (3) whether [Genworth] failed to adequately monitor the [P]lan's investment committee; (4) whether it failed to hire independent fiduciaries; and (5) whether the breaches caused plan losses." JA459 (finding these questions "are central to the validity of each of the class members' claims").

only sue derivatively.  Yet, even if participants' losses could be characterized as individualized, liability would still necessarily be determined by Genworth's actions in retaining the BlackRock TDFs for the Plan.  As the Third Circuit recently found, "the decision to offer the [challenged TDFs] was, in effect, one decision that led to thirteen allegedly imprudent funds being included in the Plan[.]"  *Boley*, 36 F.4th at 132.  No matter the circumstances of any class member's participation, they had only one choice of TDF.

Courts have soundly rejected the idea that Rule 23(a)'s prerequisites are defeated by differences concerning the "degree of injury and level of recovery" where "the alleged cause of the injury remains the same across all [TDFs]."  *Boley*, 36 F.4th at 134.  This is akin to securities class actions that are certified where "each class member rested on a securities violation resulting from a uniform course of conduct" even though the amount of their damages may differ.  *Id.* at 135 (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001) (finding factual differences between class members regarding "which security, at what price, under what circumstances, etc." do not defeat certification).  Similarly, multiple courts within this Circuit have recognized "[i]ndividual issues of loss causation do not predominate, indeed are not relevant, unless and until it becomes necessary to allocate any Plan recovery to participants."  *Sims v. BB&T*

*Corp.*, 2017 WL 3730552, at *4 (M.D.N.C. Aug. 28, 2017) (quoting *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006)).

The District Court considered Plaintiffs' expert evidence that "both Active Comparators outperformed the BlackRock TDFs in every vintage over the class period," and an expert opinion that one of these comparators "would be the most suitable replacement for the BlackRock TDFs" based on the analytical framework employed. JA451. Consistent with *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), and the decisions of several Circuits, the District Court found this expert evidence was sufficiently tethered to the theory of liability to show an injury to the Plan shared by all class members. *See id.* (citing *Behrend*; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 325 (3d Cir. 2008); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 680-82 (9th Cir. 2022)). Similarly, the Seventh Circuit has held class certification is appropriate in the defined contribution context where losses may be shown relative to one comparator even where "the damages measure will likely become more refined" based on the resolution of issues at trial. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013).

Although the panel cited two out-of-Circuit decisions on motions to dismiss for the proposition that actively-managed funds may not always serve as comparators for passively-managed funds, based on the record, the District Court

"f[ound] it plausible that the BlackRock TDFs could have been replaced with an actively managed TDF such as the American Funds [TDFs]."[7] JA454. The panel ignored the District Court's plainly rigorous analysis, blowing past the inquiry required by *Wal-Mart* and establishing a new rule under which virtually any difference in damages between class members could defeat certification.

**III.    The panel's opinion will have unworkable consequences**

The elements of an ERISA breach of fiduciary duty claim are: (1) a plan fiduciary; (2) breaches an ERISA-imposed duty; (3) causing a loss to the plan. *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014). Besides the dissonance of focusing on individual participant losses instead of the plan's losses, the decision ignores the first and second elements: whether a plan fiduciary breached an ERISA-imposed duty.

After determining § 502(a)(2) claims are "individualized monetary claims," the panel directed the District Court to "address whether class members suffered different injuries" before finding commonality satisfied. Op. at 22, 25. Finding, as the panel does, that different participation dates, risk tolerances, and market conditions between class members results in "different injuries," could have the

---

[7]Remarkably, the panel charges the District Court with failing to undertake this exact analysis. *See* Op. at 25 (finding the District Court "had to . . . resolve whether, when determining injury, the BlackRock LifePath Index Funds, which are passive funds, could appropriately be compared to active funds[.]").

result of rendering virtually all § 502(a)(2) claims with respect to a defined contribution plan *uncertifiable*.[8]  Op. at 25.  Yet, when a participant challenges the retention of an investment in a plan, their central claim will be resolved by a determination that the fiduciary either did or did not breach its duties to the plan. *See, e.g.*, *Ramos v. Banner Health*, 1 F.4th 769 (10th Cir. 2021) (affirming trial determination that defendants breached the duty of prudence and caused losses to the plan); *see also Hawkins*, 32 F.4th at 635 ("If . . . the named Plaintiffs were to be swapped out with two other employees, nothing material in the complaint would need to be changed.").

The panel's decision authorizing individual damages claims acutely risks imposing "incompatible standards of conduct" on fiduciaries, and parallel actions by different participants would dispose of each other's claims and could find fiduciaries simultaneously in compliance and in breach of its duty to monitor funds.  FED. R. CIV. P. 23(b)(1)(A), (B).  As one court in this Circuit explained:

> Suppose two Plaintiffs from the proposed class were to litigate their claims individually, and the first Plaintiff prevailed on his claim that the Defendants breached their fiduciary duty. The second Plaintiff would argue that the first result is preclusive in her case. If the court agreed with her, then Rule 23(b)(l)(B)'s requirement would be met because the first Plaintiff's result was dispositive of hers.  If the court did not find the first result preclusive and the second Plaintiff proceeded

---

[8]After the panel's decision issued, at least one court in this Circuit has vacated a prior order granting class certification.  *See Mullins v. Nat'l Rural Elec. Coop. Ass'n*, No. 1:25-cv-00994, Dkt. 103 (Mar. 13, 2026).

to trial and lost, then incompatible standards of conduct for the Defendants resulted[.]

*Knight v. Lavine*, 2013 WL 427880, at \*4 (E.D. Va. Feb. 4, 2013).

Likewise, since a § 502(a)(2) claim is brought in a representative capacity, "plan participants must employ procedures to protect effectively the interests they purport to represent." *Coan v. Kaufman*, 457 F.3d 250, 259 (2d Cir. 2006). The class device satisfies this concern. *See id.* at 261. By characterizing participants' interests in plan management as "individualized monetary claims" capable of separate actions, the panel fashioned a new right of action that neither the Supreme Court nor any other Circuit recognizes.

## CONCLUSION

Rehearing *en banc* should be granted.

Date: March 24, 2026

/s/ James E. Miller
James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
lrubinow@millershah.com

16

James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        ajberin@millershah.com

*Counsel for Plaintiffs-Appellees*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2026, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.  Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ James E. Miller*
James E. Miller

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This Petition complies with the type-volume limitation of FED. R. APP. P. 40(d)(3) because this Petition contains 3,876 words, excluding the parts exempted by FED. R. APP. P. 32(f).

2.      This Petition complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared using Microsoft Word in 14-point Times New Roman font.

Dated: March 24, 2026                  */s/ James E. Miller*
                                       James E. Miller

                                       *Counsel for Plaintiffs-Appellees*