No. 24-1880

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

PETER TRAUERNICHT and ZACHARY WRIGHT, individually
and as representatives of others similarly situated, on behalf of the
GENWORTH FINANCIAL, INC. RETIREMENT AND SAVINGS PLAN,

*Plaintiffs-Appellees*,

v.

GENWORTH FINANCIAL, INC.,

*Defendant-Appellant.*

On Appeal from the United States District
Court for the Eastern District of Virginia
No. 3:22-cv-532 (Hon. Robert E. Payne)

## BRIEF OF AMICUS CURIAE ATTICUS ADMINISTRATION, LLC IN SUPPORT OF PLAINTIFF-APPELLEE'S PETITIONS FOR REHEARING *EN BANC*

Carl F. Engstrom
Mark E. Thomson
Engstrom Lee LLC
323 N Washington Ave, Suite 200
Minneapolis, MN 55401
Tel: (612) 305-8349
Fax: (612) 677-3050
cengstrom@engstromlee.com
mthomson@engstromlee.com

Chris Longley
Atticus Administration, LLC
1295 Northland Dr., Suite 160
St. Paul, MN 55120
Tel: (844) 728-8428
Fax: (888) 326-6411
clongley@atticusadmin.com

*Counsel for Proposed Amicus Curiae Atticus Administration, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................II

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..............................................1

INTRODUCTION ................................................................................................2

ARGUMENT ......................................................................................................3

    I.   DAMAGES ARE NOT "INDIVIDUALIZED"...............................................3

        A. Because an ERISA Class Member's Damages are Calculated Without Regard to Individual Circumstances or Evidence, Their Damages are Not "Individualized" under *Dukes* and *Ortiz*. ..............................................3

        B. Liability and Damages in ERISA Defined Contribution Cases are Not "Individualized"; They are Measured at the Plan Level. ...........................4

        C. Distributions to Individual Accounts are Performed by Plan Fiduciaries—No Individualized Determinations are Performed by the Court. ..................................................................................................6

        D. Damages Determinations are Mechanical and Based on a Formula..........7

    II.  CERTIFICATION OF A RULE 23(B)(1) CLASS DOES NOT IMPLICATE DUE PROCESS RIGHTS GIVEN STATUTORY AND PRACTICAL OBSTACLES TO INDIVIDUAL RECOVERY ....................8

    III. THE PANEL MISINTERPRETED THE SUPREME COURT'S DECISION IN *ORTIZ* .........................................................................9

CONCLUSION ..................................................................................................11

CERTIFICATE OF SERVICE.................................................................................13

CERTIFICATE OF COMPLIANCE ........................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*,
 151 F.3d 402 (5th Cir. 1998) ...................................................................................4

*Berry v. Schulman*,
 807 F.3d 600 (4th Cir. 2015) ...............................................................................4, 8

*Boyd v. Coventry Health Care, Inc.*,
 299 F.R.D. 451 (D. Md. 2014) ...............................................................................7

*Cedeno v. Sasson*,
 100 F.4th 386 (2d Cir. 2024) ..............................................................................8–9

*Donovan v. Bierwirth*,
 754 F.2d 1049 (2d Cir. 1985) .................................................................................5

*Investment Co. Institute v. Clarke*,
 630 F. Supp. 593 (D. Conn. 1986).........................................................................11

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
 702 F.3d 364 (7th Cir. 2012) ..................................................................................4

*LaRue v. DeWolff, Boberg & Assoc., Inc.*,
 552 U.S. 248 (2008) ........................................................................................8, 9, 11

*Lewis v. Alexander*,
 685 F.3d 325 (3d Cir. 2012) ...........................................................................10–11

*Matter of Goldberg Irrevoc. Trust*,
 608 N.Y.S.2d 382 (1994)........................................................................................11

*Moreno v. Deutsche Bank Americas Holding Corp.*,
 No. 15 Civ 9936 (LGS), 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ...............7

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999)................................................................................*passim*

*Peters v. Aetna*,
 2 F.4th 199 (4th Cir. 2021) .....................................................................................5

*Rozo v. Principal Life Ins. Co.*,
 No. 4:14-cv-000463-JAJ-CFB, 2017 WL 2292834
 (S.D. Iowa May 12, 2017) ...................................................................................7

*Smith v. Tower Loan of Miss.*,
 216 F.R.D. 338 (S.D. Miss. 2003) .......................................................................9

*Tatum v. RJR Pension Inv. Comm.*,
 761 F.3d 346 (4th Cir. 2014) ...............................................................................6

*Tatum v. RJR Pension Inv. Comm.*,
 855 F.3d 553 (4th Cir. 2017) ...............................................................................6

*Thole v. U.S. Bank N.A.*,
 590 U.S. 538 (2020)............................................................................................10

*Tibble v. Edison Int'l*,
 No. CV 07-5359 SVW (AGRx), 2017 WL 3523737
 (C.D. Cal. Aug. 16, 2017) ...................................................................................6

*Trauernicht v. Genworth Financial*,
 169 F.4th 459 (2026) ...................................................................................*passim*

*Tussey v. ABB*,
 No. 2:06–cv–04305–NKL, 2017 WL 6343803 (W.D. Mo. 2017)..................5–6

*Tussey v. ABB*,
 850 F.3d 951 (8th Cir. 2017) ...............................................................................5

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
 No. 8:15-cv-1614-JLS-JCGx, 2017 WL 2655678 (C.D. Cal. June 15, 2017) .....7

*Verardo v. Progressive Cas. Ins. Co.*,
 No. 22 Civ. 1714 (LGS), 2025 WL 1558336, at *2 (S.D.N.Y. June 2, 2025) .....7

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).....................................................................................2, 3, 4

## **<u>Rules</u>**

Fed. R. Civ. P. 23(b)(1)...............................................................................*passim*

Fed. R. Civ. P. 23(b)(2)...............................................................................................9

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Atticus Administration, LLC is a settlement administrator with substantial experience administering complex class and representative actions, including ERISA matters. Atticus has handled more than 1,500 settlements nationwide, including more than 20 ERISA defined contribution settlements. Atticus has experience with the standard for Rule 23(b)(1) class certification; administration of mandatory and opt-out settlements; and administration of ERISA defined contribution settlements, including the use of plan-level data and formulaic methodologies to allocate recoveries among participant accounts.

Atticus submits this brief because the panel opinion depicts Fed. R. Civ. P. 23(b)(1) certification and what constitutes "individualized monetary claims" in ways that greatly differ from the prevailing legal standard. Atticus also submits this brief because the panel's depiction of ERISA defined contribution litigation, in Atticus's experience, does not reflect its practical operation. ERISA defined contribution cases alleging plan-wide fiduciary misconduct are litigated, resolved, and administered on a plan-wide basis, not through a series of participant-by-participant proceedings requiring individualized damages determinations.[1]

---

[1] No party's counsel authored this brief in whole or in part, and no person or entity contributed money to fund its preparation or submission.

## **INTRODUCTION**

In *Trauernicht v. Genworth Financial*, a Fourth Circuit panel reversed a district court order certifying a Rule 23(b)(1) class of defined contribution plan participants alleging fiduciary mismanagement of the plan's target-date funds. 169 F.4th 459 (2026). The panel found that because the recovery would ultimately accrue to individual participant accounts, the action consisted of "individualized monetary claims" that could only be certified under Rule 23(b)(3) under Supreme Court precedent in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846–47 (1999), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011).

The panel erred in several ways. First, Plaintiffs' claims here are not "individualized" claims for monetary damages—meaning damages claims requiring consideration of evidence that is unique to each class member. ERISA class actions do not operate this way: as Fourth Circuit case law firmly establishes, liability and losses in ERISA defined contribution suits are measured entirely on the plan level, and damages are awarded to the plan. No individualized inquiry takes place, and the distribution of the plan's recovery to individual accounts is (1) performed by the plan's fiduciaries, not the court, and (2) calculated using a single formula, without individualized inquiries. Nothing about this is "individualized," and thus certification of a mandatory class under Rule 23(b)(1) does not implicate class members' due process rights. What is more, class members are not losing any

right: ERISA does not permit individuals to bring suit for individual recovery where the alleged breach and its impact are both plan-wide in nature, so non-party class members have no access to their own day in court absent inclusion in a class along with notice and an opportunity to object.

Additionally, the panel misinterpreted the Supreme Court's discussion of Rule 23(b)(1) certification in *Ortiz*. Properly understood, *Ortiz* explicitly endorses certification of classes under Rule 23(b)(1) to recover losses to a plan caused by a fiduciary breach, as dozens of courts around the country have held.

## ARGUMENT

## I. DAMAGES ARE NOT "INDIVIDUALIZED"

The panel's denial of certification under Rule 23(b)(1) was premised largely on the idea that a fiduciary breach claim concerning a defined contribution plan constitutes an "individualized monetary claim," given that damages would ultimately be paid into each participant's individual account. This conclusion was based on an incorrect definition of "individualized" damages claims and a misunderstanding of how liability and damages are determined under ERISA.

### A. Because an ERISA Class Member's Damages are Calculated Without Regard to Individual Circumstances or Evidence, Their Damages are Not "Individualized" under *Dukes* and *Ortiz*.

The panel repeatedly invoked the prohibition in *Dukes* and *Ortiz* on "individualized monetary claims" in non-opt-out classes based on the fact that

damages in this case would ultimately be paid to individual participant accounts. *See Trauernicht*, 169 F.4th at 467, 469. But the term "individualized" as used in *Dukes* does not mean "individual." As the Seventh Circuit explained, "individualized" monetary damages are "awards based on evidence specific to particular class members." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 370 (7th Cir. 2012) (Posner, J.). This interpretation is supported by the Fifth Circuit's opinion in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)—cited in *Dukes* and the Fourth Circuit's opinion in *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015)—that damages claims are "individualized" where by their nature there is a "need for significant individualized proof" specific to individual class members. *Allison*, 151 F.3d at 408. In contrast, damages are non-individualized where—like here—they are "more in the nature of a group remedy" that is "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* at 415.

B.     **Liability and Damages in ERISA Defined Contribution Cases are Not "Individualized"; They are Measured at the Plan Level.**

The method of measuring damages in *Dukes* and *Ortiz* is different from how damages are measured in ERISA defined contribution class actions. Though the panel speculated—without authority—as to possible individual inquiries, the language of the statute and decades of case law adjudicating liability and damages

for defined contribution plans demonstrate that individual inquiries are not required at any stage of this litigation, including the damages phase. In concluding that Plan losses are calculated on an individualized basis, the *Trauernicht* panel's decision conflicted with Fourth Circuit caselaw and multiple sister courts of appeals.

Other courts of appeals have confirmed that damages are measured plan-wide in ERISA litigation concerning defined contribution plans. *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985), a seminal opinion, provided that "the measure of loss applicable under ERISA section 409 requires a comparison of what the Plan actually earned on the [imprudent] investment with what the Plan would have earned had the funds been available for other Plan purposes." *Id.* at 1056. The Fourth Circuit adopted this methodology in *Peters v. Aetna*, 2 F.4th 199, 222–23 (4th Cir. 2021).

In *Tussey v. ABB*, the Eighth Circuit applied the same measure of damages to a target-date-fund suite like the one at issue here, concluding that damages caused by defendants' imprudent and disloyal selection of the Fidelity Freedom Funds should be measured by comparing the overall performance of the funds in the plan to how the plan would have performed had a prudent alternative been selected. *Tussey v. ABB*, 850 F.3d 951, 960 (8th Cir. 2017). In subsequently determining the amount of losses, the district court did not consider the

circumstances or losses of any specific participant—only the plan. *Tussey v. ABB*, No. 2:06–cv–04305–NKL, 2017 WL 6343803, at *3 (W.D. Mo. 2017). Similarly, in *Tibble v. Edison Int'l*, lost investment earnings resulting from a fiduciary breach were calculated not by analyzing how each participant would have invested the extra money, but instead by using the plan's overall rate of return during the period. No. CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *14 (C.D. Cal. Aug. 16, 2017).

The Fourth Circuit's decisions in *Tatum v. RJR Pension Inv. Comm.* ("*Tatum I*"), 761 F.3d 346 (4th Cir. 2014) and *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553 (4th Cir. 2017) ("*Tatum II*"), demonstrate the same principle. In both opinions, both the legal and factual analysis of loss causation were focused entirely on the plan-level decisions and fiduciary conduct, without any consideration of the circumstances of any individuals invested in the company stock fund. *Tatum I*, 761 F.3d at 363–64; *Tatum II*, 855 F.3d at 562–63. The *Trauernicht* panel's holding that individualized inquiries would be required to determine damages was contrary to Fourth Circuit case law.

### C. Distributions to Individual Accounts are Performed by Plan Fiduciaries—No Individualized Determinations are Performed by the Court.

Not only are damages measured at the plan level, but it is the plan that recovers damages, which are then allocated to participants by the plan fiduciaries,

6

not the court. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-1614-JLS-JCGx, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017) ("Here, Plaintiffs are seeking to certify a class under Rule 23(b)(1), and they seek monetary relief for the Plan, not individual Plan participants. . . . After a lump sum payment is made to the Plan, the Plan fiduciaries will distribute the lump sum to Plan participants."); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ 9936 (LGS), 2017 WL 3868803, at *9 (S.D.N.Y. Sept. 5, 2017) (same). Thus, to the extent any individualized inquiries take place, they are performed by the plan's fiduciaries after the court has disposed of the case.

D. **Damages Determinations are Mechanical and Based on a Formula.**

The plan fiduciaries' distribution of losses to individual accounts—implemented by a settlement administrators like Atticus—is not individualized either. It is done mechanically using a formula. *See, e.g.*, *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) (distribution of proceeds to DC plan participants was "on a *pro rata* basis" as part of a "formula" under which "[a]ll class members are treated equally"); *Rozo v. Principal Life Ins. Co.*, No. 4:14-cv-000463-JAJ-CFB, 2017 WL 2292834, at *6 (S.D. Iowa May 12, 2017) (damages measured through pro-rata formula); *Verardo v. Progressive Cas. Ins. Co.*, No. 22 Civ. 1714 (LGS), 2025 WL 1558336, at *2 (S.D.N.Y. June 2, 2025) (same). This is consistent with our experience as settlement administrators. In

every ERISA defined contribution settlement we have administered at Atticus and at previous settlement administration firms, the distribution has been based on plan data obtained from the recordkeeper and a uniform formula for how to allocate the recovery.

## II.  CERTIFICATION OF A RULE 23(B)(1) CLASS DOES NOT IMPLICATE DUE PROCESS RIGHTS GIVEN STATUTORY AND PRACTICAL OBSTACLES TO INDIVIDUAL RECOVERY

The *Trauernicht* panel concluded that certification of a mandatory class under Rule 23(b)(1) would deprive non-parties of their "day in court" to seek individual damages. This proposition is flawed for two reasons. First, because the harm here is solely a group harm subject to non-individualized, mechanical calculation of damages, non-parties' due process rights are sufficiently protected by the adequacy and commonality elements of Rule 23. *Berry*, 807 F.3d at 611–12 (opt-out rights not required where monetary relief is "in the nature of a group remedy" and the "relief sought is uniform," so long as adequacy element is satisfied).

Second, ERISA does not afford the right that the panel claims must be preserved through the ability to opt out of the class. "[N]othing in *LaRue* suggests that an individual claimant like Cedeno who is aggrieved by a breach of fiduciary duty that has a plan-wide impact can seek a remedy under Section 502(a)(2) that benefits solely that individual's account. That notion is inconsistent with the plain

8

language of Section 409(a), which speaks solely of injuries *to the plan*, and flies in the face of the Supreme Court's reading of the statute in *Russell* and *LaRue*." *Cedeno v. Sasson*, 100 F.4th 386, 404–05 (2d Cir. 2024). Absent such a right, including a non-party in a (b)(1) class would not take away any right to their "day in court." *See Smith v. Tower Loan of Miss.*, 216 F.R.D. 338, 379 (S.D. Miss. 2003) (finding that "no due process right to opt out arises" from certification of a (b)(1) or (b)(2) class because the "Class Members here have no constitutionally-protected property right to personally vindicate their claims for monetary relief in separate litigation").

## III. THE PANEL MISINTERPRETED THE SUPREME COURT'S DECISION IN *ORTIZ*

The panel's opinion turned significantly on its interpretation of *Ortiz*'s discussion of Fed. R. Civ. P. 23(b)(1)(B), which provides for certification where the prosecution of separate actions would create the risk of adjudications that are dispositive of the interests of non-party members or that would substantially impair or impede their ability to protect their interests. 527 U.S. at 833. *Ortiz* then discusses the Advisory Committee Notes to this subsection, noting that "[c]lassic examples of such a risk impairment may, for example, be found in . . . actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or

9

similar procedure 'to restore the subject of the trust.'" *Id.* at 833–34 (quoting Advisory Committee Notes on Rule 23).

The *Trauernicht* panel concluded that this passage supported class certification for only defined benefit plans, but not defined contribution plans, because the recovery for a defined contribution plan litigant "would be paid not to the plan generally . . . but rather to the participant's individual retirement account." *Trauernicht*, 169 F.4th at 468. According to the panel's logic, the private trust analogy applies to defined benefit plans, but cannot be extended to defined contribution plans because the recovery flows to individual beneficiary accounts.

But the Supreme Court has said the opposite, explaining in *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), that private trusts are akin to defined contribution plans, *not* defined benefit plans, because in both a private trust and a defined contribution plan, "the value of the trust property and the ultimate amount of money received by beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk." *Id.* at 542.

Further, the existence of individual accounts within a defined contribution plan does not distinguish them from trusts, as many trusts use the same structure. For example, pooled special needs trusts operate around the country and have individual accounts, like defined contribution plans. *Lewis v. Alexander*, 685 F.3d 325, 333 (3d Cir. 2012) ("A 'pooled trust' is a special arrangement with a non-

10

profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust accounts being maintained for each disabled individual.") (quotation marks and citation omitted). Private trusts are often split up into separate subtrusts for each individual, "to enable the trustee to invest the assets in a manner that would meet the disparate financial needs and investment goals of individual trust beneficiaries." *Matter of Goldberg Irrevoc. Trust*, 608 N.Y.S.2d 382, 382 (1994). Finally, in master trusts or common trusts, assets of numerous beneficiaries are pooled together, with each beneficiary having an interest in the common trust equal to their proportionate share of the contributions. *See Investment Co. Institute v. Clarke*, 630 F. Supp. 593, 594 (D. Conn. 1986). Thus, the fact that "a defined contribution plan is essentially the sum of its parts," *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 262–63 (2008) (Thomas, J., concurring), does not in any way undermine the applicability of the Advisory Committee's and Supreme Court's guidance that actions to restore the subject of a trust to remedy a fiduciary breach represent a "classic" example of a Rule 23(b)(1) class. *Ortiz*, 527 U.S. at 833–34.

## <u>CONCLUSION</u>

For the above-mentioned reasons, *amicus curiae* Atticus Administration, LLC respectfully recommends granting *en banc* review.

Respectfully Submitted,

Date: April 14, 2026

*/s/ Carl F. Engstrom*
Carl F. Engstrom
Mark E. Thomson
Engstrom Lee LLC
323 N Washington Ave, Suite 200
Minneapolis, MN 55401
Tel: (612) 305-8349
Fax: (612) 677-3050
cengstrom@engstromlee.com
mthomson@engstromlee.com

Chris Longley
Atticus Administration, LLC
1295 Northland Dr., Suite 160
St. Paul, MN 55120
Tel: (844) 728-8428
Fax: (888) 326-6411
clongley@atticusadmin.com

*Counsel for Amicus Curiae Atticus
Administration, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Carl F. Engstrom*

Carl F. Engstrom

*Counsel for Amicus Curiae Atticus Administration, LLC*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(a)(5) because this brief contains 2,518 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman type style.

*/s/ Carl F. Engstrom*

Carl F. Engstrom

*Counsel for Amicus Curiae Atticus Administration, LLC*